JOHN HARRAH, APPELLANT, v. HOME FURNITURE, INCORPORATED, A CORPORATION, RESPONDENT.

No. 3593

February 14, 1950.                    214 P.2d 1016.

*Harlan L. Heward,* of Reno, for Appellant.

*Bert M. Goldwater* and *David Goldwater,* of Reno, for Respondent.

## OPINION

By the Court, BADT, J.:

Home Furniture, Incorporated, recovered a judgment against John Harrah, pursuant to verdict of a jury, for $820.75 as a balance due for merchandise ordered by and delivered to Gloria Harrah, the defendant's wife, and

charged to Harrah's account. He has appealed from the judgment and order denying new trial. The main question involved is that of the creation by Harrah of an ostensible agency in his wife. No question is raised as to the delivery of the merchandise or its reasonable value.

Plaintiff's book accounts admitted in evidence showed an account against John Harrah commencing February 14, 1947 with an item of $842.40 for carpet, etc., which was paid March 7, 1947; an item of April 26, 1947 in the sum of $22 for Venetian blinds; an item of credit on July 31, 1947 of $22.50 for the return of one of two lamps which had been purchased for cash for $44.50. The testimony shows that all of these items were ordered by defendant John Harrah personally. The account then shows on March 25, 1948 the purchase (also by Mr. Harrah) of two card tables for $7.90, which left the account with a credit balance of $14.60. Next appear charges on June 21, 1948 of a boy's bicycle for $42.95 and poultry shears $3.75, aggregating $46.70, which, after applying the credit balance of $14.60, left a debit balance of $32.10. The bicycle and poultry shears were purchased by Mrs. Harrah and charged to John Harrah's account. This balance he paid on July 10, 1948 on receipt of what he states was an unitemized statement of balance due and which he paid thinking that it was for items that he himself had ordered. Witnesses for the plaintiff testified that the $32.10 paid by Harrah was upon an itemized bill, and the jury apparently accepted that testimony. The account next shows purchases on August 27 and September 15, 1948 of numerous items of luggage amounting to $820.75 by Mrs. Harrah, and these items comprise the ones in dispute.

John Harrah and Gloria Harrah were married May 23, 1948. Apparently her divorce from a former husband had not at that time become final and the parties were again married July 7, 1948. They separated September 20, 1948, the day that the major group of items, aggregating $620, was purchased by Mrs. Harrah. Mr. Harrah filed a complaint for divorce against her on September

21, 1948 and decree of divorce was entered November 29, 1948.

The payment made by the defendant on July 10, 1948 of the items purchased by Mrs. Harrah and charged to his account in June, 1948 is relied upon as the creation of an ostensible agency establishing his liability for her purchases in his name in September of that year.

■■ Appellant concedes that agency may be implied from a prior course of dealing, but insists that his payment of one bill does not establish a *course*. (One of the definitions of "course" appearing in the 1948 edition of Webster's International Dictionary is "a succession of acts or practices as, a *course* of conduct.") Respondent contends that ostensible authority may be conferred by the recognition of a single similar act of the agent if sufficiently unequivocal. It cites 1 Cal.Jur. 742, par. 42, to the following effect: "Where the third person relies upon an ostensible agency, he must give evidence of similar transactions in which the act of the agent was authorized or recognized; or, more accurately, since an ostensible authority may be conferred by the recognition of a single act of the agent if sufficiently unequivocal, the third person must show at least one specific instance in which a similar act of the alleged agent was authorized or recognized."

It also relies on Wilcox v. Chicago, Milwaukee & St. Paul Railroad Co., 24 Minn. 269, in which case the court, in approving the trial court's refusal to give a requested instruction that the approval of more than one act of the alleged agent is necessary to raise a presumption of authority, said: "This request is bad; a single act of the agent and a recognition of it by the principal may be so unequivocal and of so positive and comprehensive a character, as to place the authority of the agent to do similar acts for the principal beyond any question. The value of such proof does not depend so much on the number of acts as upon their character."

Appellant characterizes this holding as *dictum* and notes that no authority is cited to support it.

The rule was approved in Graves v. Horton, 38 Minn. 66, 35 N.W. 568, although it is true that the court there held that it did not apply to the facts in that case. It was also approved in Quinn v. Dresbach, 75 Cal. 159, 16 P. 762, 7 Am.St.Rep. 138, and in Bryan v. Jackson, 4 Conn. 288, under authority of 1 Christian, Blackstone's Commentaries, 430, and also in Harrison v. Legore, 109 Iowa 618, 80 N.W. 670. It is similarly stated in 1 Mechem on Agency, 192, note, citing these cases, and in other texts.

No authorities have been presented disapproving or even criticising these cases and we think the rule as stated is good law.

To reject it is to adopt its equivalent negative, that *in no case* can the acquiescence in or approval of a previous single act, no matter how pronounced, conclusive, unequivocal or comprehensive, justify an inference of authority to do a similar act. We do not feel justified in adopting so mechanical a rule. Appellant concedes that the approval of two acts might constitute the approval of a "course of conduct," acceptable under all the authorities as sufficient to justify the inference. A dozen acts would be more convincing, and a hundred still more so, as in such case the "inference is more readily and more surely drawn" Aga v. Harbach, 127 Iowa 144, 102 N.W. 833, 834, 109 Am.St.Rep. 377, 4 Ann.Cas. 441, but no fixed yardstick can be justly applied.

■ Appellant assigns as reversible error the admission in evidence, over his objection, of respondent's books of account upon the ground that they were not admissible as proof of agency. It is clear however that they were not admitted for such purpose and that proof of agency *aliunde* was first required. The court stated in the presence of the jury that the books were admitted subject to the objections of defendant and would be stricken "unless the agency is established as required by law." This was made clear throughout the trial. The proof of agency was thereafter submitted. At the close of the evidence defendant renewed his objection and his

motion to strike the exhibits. We feel that the motion was properly .denied.

■ Appellant assigns as error the giving of an instruction on the question of ratification (1) because that was a question of law for the court, (2) because there was no evidence of ratification, and (3) because, not being in writing, it was barred by the statute of frauds. Mr. Harrah frankly admitted a conversation with plaintiff concerning payment of the disputed bill, but insists that this was at most a conditional promise to pay the bill if plaintiff should be unable to get the money out of a proposed attachment of the wife's car. There was sufficient evidence in our opinion to go to the jury under a proper instruction as to ratification, which was given. 2 Am.Jur. 361, Agency, sec. 454, n. 13. Called as an adverse witness, Mr. Harrah testified as follows: "I said, 'I don't like to see you get stuck for it. If you can collect it out of her,' I said, 'she has a good automobile that I bought for her and if it could be attached you could get your money out of it.' I said, 'I don't know where she is now. She is gone away and I don't know whether she will be back. I filed suit for divorce against her; she is making an appearance but I don't know whether she will be here.' But I said, 'I'd like to locate her and I am mad at her and I'd like to see somebody take the car away from her.' So I said, 'If I locate her and I find that the car is in such shape you could attach it, and I would satisfy myself,' I said, 'I practiced law most of my life, if I could satisfy myself that if I attach it you can collect your bill, and if I so advise you, then if you go ahead and do it and you don't get the money out of the car, I will pay the bill, myself,' but I said, 'I don't know even if I can locate her.' He said, 'I think that will be all right; I think I would like to talk to the boys about it,' or something like that and I said, 'All right, if I locate her or the car I will let you know'."

Some of this is not too clear, but the jury were able to get a better picture from the demeanor of the witness and the manner in which the words were spoken.

■ Appellant has submitted a list of authorities in which the statute of frauds was successfully invoked, but we find that in these cases the original credit was given to the wife and the husband was sued on his promise to pay her debt. This has no application here.

■ Error is also assigned in the court's refusal to give the jury defendant's proposed instruction to the effect that no presumption of agency arises from cohabitation. The court instructed the jury: "You are instructed that a wife is not the agent of her husband by force of the marriage relationship existing between them; the husband, however, may make his wife his agent and be bound by her acts as such agent. The agency relationship between husband and wife in such case rests upon the same considerations of any other agency; she is his agent and he is bound by her acts as his agent, only when her agency is expressed or implied."

According to the testimony the parties were husband and wife, and the instruction as to lack of any presumption growing out of cohabitation was properly refused. The instruction given was all that was necessary and it properly instructed the jury as to the law.

The court also refused to give the following instruction proposed by defendant: "The law indulges in no presumption that an agency exists but instead presumes that a person is acting for himself and not as agent for another."

■ In our opinion the instruction given, negativing agency as arising from the marriage relationship, is stronger than the one refused.

The court also refused the following instruction: "An assumption of authority to act as agent for another of itself challenges inquiry. Like a railroad crossing, it should be in itself a sign of danger and suggest the duty to 'stop, look and listen.' It is therefore declared to be a fundamental rule, never to be lost sight of and not easily to be overestimated, that persons dealing with an assumed agent, whether the assumed agency be a gen-

eral or special one, are bound at their peril, if they would hold the principal, to ascertain not only the fact of the agency but the nature and extent of the authority, and in case either is controverted, the burden of proof is upon them to establish it."

While this picturesque language may indeed in a proper case be a true statement of law, we cannot find reversible error in its rejection. The court instructed the jury: "You are instructed that a husband cannot escape liability from the ostensible agency of his wife arising from past dealings, acts and omissions, by mere notice to his wife or notice not brought home to the tradesman. The tradesman has a right to presume that the authority of the wife, having been once held out to the tradesman by the husband, continues until the tradesman has reason to know to the contrary. Therefore, if you find that John Harrah by his acts and conduct held Gloria C. Harrah out to the Home Furniture Company as his agent with the power to pledge his credit for purchase in plaintiff's store, then you must find that the authority of Gloria C. Harrah as such agent continued until the plaintiff was actually notified to the contrary."

Other instructions dealt properly with the subject. We do not find it necessary to quote them all. It is true that they do not characterize an assumption of agency as "a sign of danger," nor instruct the jury that one dealing with an agent is "bound at his peril" to ascertain the agency, but in view of the evidence of prior ostensible agency on which plaintiff relied, we think the court was justified in refusing these characterizations.

■ Both parties in their opening statements to the jury stated that the issue was a simple one. Plaintiff stated, among other things that it would rely on the husband's payment of the wife's prior purchases against his account as justifying further purchases similarly charged. Defendant stated that he simply denied liability and knew nothing of the transactions and never created his wife his agent. As we find no prejudicial

122

errors in the admission or rejection of evidence or in the instructions given or refused, as presented in appellant's assignment of errors, we cannot intrude upon the functions of the jury in finding a verdict for plaintiff.

The judgment and the order denying the defendant's motion for new trial are hereby affirmed with costs.

HORSEY, C. J., and EATHER, J., concur.