JOHN HARRAH, APPELLANT, *v.* SPECIALTY SHOPS, INC., RESPONDENT.

No. 3613

August 4, 1950.                                221 P.2d 398.

*Harlan L. Heward,* of Reno, for Appellant.

*L. D. Summerfield,* of Reno, for Respondent.

## OPINION

By the Court, BADT, J.:

Specialty Shops, Inc., respondent, operating a dress shop at Reno, Nevada, under the name of "Magnin's," recovered a judgment against John Harrah, appellant, on two causes of action, the first for $1,877.10 for merchandise furnished his wife, Gloria, from May to September, 1948, and the second for $516.10 for merchandise furnished a subsequent wife, Betty, in December, 1948 and January, 1949. The amended complaint alleged that plaintiff furnished the merchandise, under the first cause of action, to "Gloria C. Harrah, at her request, as defendant's agent," and, under the second cause of action to "Betty Harrah, at her request, as defendant's agent." The findings made by the court (the case was tried without a jury) were in the same language.

Appellant and Gloria were married May 23, 1948.

On the next day Gloria started making the purchases involved in the first cause of action. On May 24 she bought from respondent two hats for $117.50. On the 26th she bought gloves, hose and a dress aggregating over $100. On the 27th she bought seven pairs of shoes for $119.70. In June she purchased hats, shoes, dresses, bags, one suit for $195, one for $175, lingerie for $307.90, and so on through July and August and until the 4th of September, 1948, aggregating $3,451.19. After credits, the balance was $1,877.10. Not all of these items were purchased by Gloria. Items aggregating $571.25 were purchased by Gloria's sister, Genevieve Cross, and Mrs. Margaret James, Gloria's mother. They included such items as a beaver skin for $110, a coat for $198.50, and a suit for $110.

Appellant and Gloria were divorced November 29, 1948, and appellant and Betty were married in December 1948. Between December 14, 1948 and January 7, 1949, Betty purchased items aggregating $516.10.

It was not claimed by respondent that any of the purchases were necessaries. When appellant sought during the trial to introduce evidence to the effect that the purchases were not necessaries, respondent's counsel, in objecting said: "There is no theory in this case contracting on necessaries. It either stands or falls on agency." The court sustained the objection. Nor does respondent claim that appellant at any time either in writing or orally authorized either his wife Gloria or his wife Betty to make any of the purchases or to pledge his credit. Nor is the theory of undisclosed principal involved. Accordingly, the only theory under which the judgment may be sustained is (1) that appellant ratified the actions of Gloria and Betty, respectively, in making purchases in his name, as his agents, or (2) by a legal and valid promise on his part to pay the obligation.

■■ (1) For appellant to be liable for the obligations under the theory of ratification, the acts to which such ratification is sought to be applied must have been acts done or performed by Gloria or by Betty professedly

acting as such agent and for appellant's account or benefit. It is unnecessary for us to enter into a discussion of the distinction between ratification and adoption (the terms have been variously used interchangeably by many courts), or the relation of the term to confirmation, affirmation, etc. It is as clear as it is elementary that for ratification to become operative in the law of agency, it is essential that the act sought to be ratified be done by one purporting to act as agent, and that ratification does not take place when the action in question is done by the person in his individual capacity. 2 C.J.S., Agency, sec. 41, a and b, p. 1078, and cases cited in notes. Applying this rule to the undisputed evidence in the case, we find that every single item of purchase made by Gloria was made by her in her own name and for her own benefit. This is likewise true of the purchases made by Betty. Plaintiff introduced in evidence the triplicate copies of some forty-three charge slips or tags. The ones indicating Gloria's purchases were all charges to the account of Mrs. John Harrah. The same applies to the tags evidencing the purchases made by Betty. Plaintiff also introduced in evidence a summary of Gloria's account, attested by the president and under the seal of the corporation, which is preceded by the following certification: "The following is a true and exact listing of the items appearing on the account of Mrs. John Harrah (Gloria Harrah)." It also introduced in evidence a similar summary, likewise under the hand of the president and the corporate seal of the plaintiff, of Betty's account, preceded by the certificate: "The following is a true and exact listing of the items appearing on the account of Mrs. John Harrah (Betty Harrah)."

After adopting the plaintiff's proposed findings of fact to the effect that the merchandise was furnished to Gloria (and under the second cause of action to Betty) "at her request, as defendant's agent," the court added the following two findings at the request of the defendant:

"XII. That the Gloria Harrah account was opened

and carried on the books and records of the plaintiff in the manner and form as shown by Plaintiff's Exhibit No. 9 [the credit card hereinafter referred to]; all purchases made by Gloria Harrah were carried on the books and records of the plaintiff in the manner and form as shown by Plaintiff's Exhibit No. 10 [the sales slips to Gloria].

"XIII. All purchases made by Betty Harrah were carried on the books and records of the plaintiff in the manner and form as shown by Plaintiff's Exhibit No. 12 [the sales slips to Betty]."

At the time Gloria went to Magnin's to make her first purchase a credit card was, in respondent's own words, "set up," which credit card plaintiff introduced in evidence. It is as follows:

| "~~Mr.~~ | Name |
| Mrs. | John Harrah |
| ~~Miss~~ | |
| Address | 252 1st West Reno |
| Position | Owner—5 years |
| Firm | Harrahs Club |
| Firm Address | Reno, Nevada |
| Wife | Glorie |
| How Long | Few Days (New) |
| Wife's Position | House Wife |
| | (Sgn'd) Gloria C. Harrah." |

Respondent contends that this credit card is probably the most important factor in determining the issue as to whether the credit was granted to Gloria individually, or to appellant. That it is an important factor is evident. Respondent calls attention to the financial standing of the respondent; that he was the member of the marriage partnership who had the wealth and the position; that "credit to the extent involved in the account in question certainly would not have been granted to Gloria personally"; and that it is "obvious that the credit was granted to John Harrah of Harrahs Club," and not to his wife of a few days; that the striking out

of "Mr." and "Miss" was simply "for the purpose of having the bills sent to Gloria" and "does not mean a thing as affecting the party to whom the credit was extended." The credit card speaks for itself. Gloria had the items charged to herself as Mrs. John Harrah and the plaintiff so made the charges, so issued all of the charge slips and so carried the account on its books.

Appellant had quoted from 37 C.J.S., Frauds, Statute of, sec. 285c (2), p. 821, as follows: "In determining to whom, as between the promisor and the person for whose benefit the promise is made, the credit was actually given, an important consideration is the manner in which the creditor entered the transaction on his books. Evidence that the goods sold were charged to the person to whom they were delivered strongly tends to show that the seller gave credit to him and relied on him for payment, and therefore that the promise of another to be answerable for the debt was at most a collateral undertaking."

Respondent insists that the immediately following sentence in the text more properly applies. It is as follows: "Such evidence, however, is not conclusive, and it is open to explanation; its weight is for the jury. Thus it may be explained by showing that the goods were so charged at the request of the promisor as to enable him to identify such third person's items and distinguish them from his own, or by showing a local custom and usage of merchants to charge goods to the person to whom they are delivered even when they are sold on the sole credit of another."

Although there is no claim or indication in this case that appellant was the person "for whose benefit the promise was made," we see no reason to question the text as containing accurate statements of law. There is however nothing in this case to indicate that the charges were made to *Mrs.* John Harrah simply for the purpose of identifying the goods, or to distinguish the items from items sold to John Harrah, or for having the bills mailed to Mrs. John Harrah, or for any other reason than to

indicate the creditor-debtor relation between the store and Mrs. Harrah. There is no contradiction of the fact that Mrs. Harrah opened the account in her own name and that every item involved in the first cause of action was charged to her and not to her husband. That respondent, in extending credit to Mrs. Harrah, felt that the credit was good on account of her husband's standing and financial ability is probably true. It might have felt just as much justified if she had recited on the credit card that her father was a banker, her brother a wealthy cattleman or her son the president of a railroad.

In the second cause of action, involving the Betty Harrah account, it is even more apparent that the credit was extended to her. She had before her marriage to Harrah carried an account with respondent under her name of Betty Maseda. After the marriage the account was carried in the name of Mrs. John Harrah. If any credit card was "set up" in connection with this account, it was apparently done at the time the Betty Maseda account was opened.

Respondent refers to our opinion in the recent case of Harrah v. Home Furniture, Inc., 67 Nev. 114, 214 P.2d 1016, 1019, in which respondent says we approved two instructions "which properly applied the law to facts such as are here presented." The instructions we there approved were as follows:

"You are instructed that a wife is not the agent of her husband by force of the marriage relationship existing between them; the husband, however, may make his wife his agent and be bound by her acts as such agent. The agency relationship between husband and wife in such case rests upon the same considerations of any other agency; she is his agent and he is bound by her acts as his agent, only when her agency is express or implied.

"You are instructed that a husband cannot escape liability from the ostensible agency of his wife arising from past dealings, acts and omissions, by mere notice to his wife or notice not brought home to the tradesman.

The tradesman has a right to presume that the authority of the wife, having been once held out to the tradesman by the husband, continues until the tradesman has reason to know to the contrary. Therefore, if you find that John Harrah by his acts and conduct held Gloria C. Harrah out to the Home Furniture Company as his agent with the power to pledge his credit for purchase in plaintiff's store, then you must find that the authority of Gloria. C. Harrah as such agent continued until the plaintiff was actually notified to the contrary."

In the Home Furniture case however, the wife (being the same Gloria Harrah) had charged the merchandise to John Harrah, and Home Furniture, Inc., so carried the account on its books. Harrah had paid prior itemized bills for articles purchased in his name by Mrs. Harrah. The case is entirely different from the present one.

Respondent relies upon Martz v. Selig Dry Goods Co., 76 Ind.App. 135, 131 N.E. 528, and Annis v. Manthey, 234 Mich. 347, 208 N.W. 453, as "leading cases holding that where the husband makes a payment on a charge account established by the wife, it is a ratification of such a charge account." But in both of these cases the question of agency arose by reason of the fact that the wife purchased the wearing apparel from the tradesmen and charged the same to the account of her husband, such fact being emphasized and repeated throughout the opinions in both of these cases. The Martz case is very similar to our own holding in Harrah v. Home Furniture, Inc., 67 Nev. 114, 214 P.2d 1016. The Annis case turned largely upon the question as to whether a certain fur coat purchased by the wife and charged to the husband in the month of August was a necessary—an article "of ordinary household or family use." [234 Mich. 347, 208 N.W. 454.] The court there, in outlining the necessary elements in the proof of the plaintiff's case, said that the first of these elements was "that he sold the coat on defendant's credit," and that such element was not disputed. The judgment for plaintiff was reversed because of the court's failure to instruct the jury that the burden

was on plaintiff to prove that defendant had been guilty of neglect of duty in refusing to supply his wife with suitable wearing apparel. Respondent also cites Miskiewicz v. Smolenski, 249 Mich. 63, 227 N.W. 789, 792, as "a leading case holding that a subsequent promise by a husband to pay an account is a ratification of the wife's agency." We do not find the case to be in point. A wife's parents had, through the wife, deposited $5,000 to the account of the defendant husband and the sole question involved was whether this deposit was a loan to the husband or a contribution to a joint venture for the purchase of Florida real estate. It became necessary for the Supreme Court of Michigan to consider various instructions to the jury and various rulings on the admission of evidence involving questions of agency, ratification, etc. The agency in question was that of the wife in obtaining the deposit to the credit of the husband, and the obligation in question was the husband's asserted obligation to repay the money. Under these circumstances it was said that "positive testimony that defendant recognized the transaction as a loan which he repeatedly promised to repay" would amount to a ratification of the agency. But, as in Martz v. Selig and Annis v. Manthey, supra, the credit pledged would have been that of the husband. The ratification would have been of the wife's agency in pledging the husband's credit. This was made clear through the introduction in evidence of a telegram from the husband to the wife requesting her to have her parents deposit the $5,000 to his account, so that he could check it out "on their buy." We find it necessary again to point out that in the instant case the wife pledged her own credit in purchasing articles for herself.

Respondent also relies on Stegeman v. Vandeventer, 57 Cal.App.2d 753, 135 P.2d 186, 190, which, on the strength of Schader v. White, 173 Cal. 441, 160 P. 557, said that an agency of a husband or wife for the other "may be established by proof of ratification of acts already performed without previous authority." In the

latter case, however, we find that the wife had executed a full power of attorney to the husband, the husband then purported to deal in his own name with property owned by both, and the wife subsequently ratified by joining in the execution of the deed contemplated by the questioned contract, and participated in the benefits. The transaction, according to the court, also entitled her to sue or be sued as an undisclosed principal. The statement quoted above must be received in connection with such facts.

■ ■ Respondent contends that four specific items of testimony were most important "in establishing that Gloria Harrah acted as the agent of John Harrah in making said purchases *and charging the same to his account.*" As we have seen, Gloria did not charge the purchases to Harrah's account but to her own account. The items of testimony referred to by respondent are (1) that Harrah made a payment of $885.54 on the account, and (2) an employee of respondent testified that he said at the time, "I want to pay my bill." Another employee testified that on that occasion Harrah "wanted to pay on his account"; (3) that the store manager testified that Harrah told him he wanted Magnin's to sue Gloria herself for the bill and that they should sue and attach her automobile and that if they were not able to get anything out of her, he would pay the bill; and (4) said that there was no dispute with reference to Betty's bill and that he (Harrah) would take care of it. This testimony is denied by Harrah. Both parties have discussed the conflicting evidence at some length, and respondent advances the recognized rule that in view of the conflict the trial court's finding will not be disturbed. Accepting the trial court's adoption of these items of evidence and its rejection of Harrah's testimony, such evidence does not have the effect attributed to it by respondent. Respondent says that Harrah's statement as to Gloria's bill "was a recognition of liability on his part and a promise to meet the same," and that his statement as to Betty's account "was an

express ratification of her having charged the merchandise *to his account.*" But she did not charge the merchandise to his account. She charged each item of it to her own account.

■ (2) We thus see that it is contended that as to both accounts appellant subsequently promised to pay the same. Section 1533, N.C.L. provides that: "In the following cases every agreement shall be void, unless such agreement, or some note or memorandum thereof, expressing the consideration, be in writing, and subscribed by the party charged therewith: * * * second, every special promise to answer for the debt, default, or miscarriage of another * * *" It is clear that the subsequent promise to pay the bill of Gloria or the bill of Betty, if made, was void under the statute. In Harrah v. Home Furniture, Inc., 67 Nev. 114, 214 P.2d 1016, 1018, in which case, as noted above, Gloria had made purchases and charged the same to her husband's account, we rejected the defense of the statute of frauds, but said: "Appellant has submitted a list of authorities in which the statute of frauds was successfully invoked, but we find that in these cases the original credit was given to the wife and the husband was sued on his promise to pay her debt. This has no application here." These authorities (which we need not cite as the rule is so well recognized) do have direct application to the present case, in which the credit was given to the wife Gloria under the first cause of action and to the wife Betty under the second cause of action.

Both parties devote much attention to the items sold by respondent to the mother of Gloria and to the sister of Gloria, and appellant insists that in no event could he be liable for the payment of these items. It is unnecessary for us to discuss this phase of the case. As the items were likewise charged to Gloria's account they must fall with all other items so charged.

We have considered other points and further authorities cited by both parties, but in view of what we have said above it becomes unnecessary to discuss them or to

enter into any detailed consideration of the weight to be given to the testimony of the witnesses.

In re Torres' Estate (Hernandez v. Torres), 61 Nev. 156, 120 P.2d 816, 139 A.L.R. 481, this court was compelled to distribute a share of the separate property of a deceased wife to a husband who had abandoned her and her minor children, gone to Mexico and lived for twenty years in open adultery with another woman. Referring later to this decision, and noting the necessity for legislation to remedy such a condition, Mr. Justice TABER stated to an annual meeting of the Nevada State Bar: "You can readily see how much satisfaction we would take in rendering such a decision, but it was rendered upon the single basis that so the statute read * * *." Nevada State Bar Journal, April, 1942, vol. 7, No. 2, p. 46. So, in the present case it is indicated that counsel for respondent is correct in his assertion that Harrah's statements "disclosed that he is very bitter toward his former wife, Gloria, and is determined not to pay her charge accounts for this reason. From his statements and his attitude on the witness stand, we submit that he is stubbornly making it as difficult as possible for his legitimate creditors to collect monies due and owing to them." While respondent was not "his" creditor, it is probably true that he would have paid Gloria's bills if everything had gone smoothly with their marriage. The same is probably true with regard to Betty's bills. As the laborer is worthy of his hire, so is the tradesman entitled to payment of the reasonable value of the merchandise sold by him. But if through lack of foresight the tradesman extends credit to a person from whom payment cannot thereafter be exacted, that is a situation that we cannot remedy unless some other responsible person, whether the purchaser's husband or some one else, is legally liable for such payment.

We do not have the benefit of any opinion written by the trial court, and must look to the findings for a clue to the theory under which it rendered judgment against appellant. While the court found that Gloria purchased

"as defendant's agent," it also found that her account was opened and carried on the books and records of respondent in the manner herein described, which, as we have seen, recognized Gloria as the debtor. The second of these findings was destructive of the first. The same is true as to the findings with regard to Betty's purchases. The court also found, first, that the defendant promised and agreed to pay both of these accounts and, second, that he did not agree in writing to pay them, or either of them. Accordingly, the judgment cannot be supported either under the theory of agency or under the theory of the husband's subsequent promise (void under the statute of frauds) to pay them.

The judgment is hereby reversed, with costs in favor of appellant.

HORSEY, C. J., and EATHER, J., concur.