MILTON A. BOWLER AND MILTON D. BOWLER, APPELLANTS, v. STELLA B. LEONARD, FORMERLY KNOWN AS STELLA B. LEONARD BELANGER, NOW STELLA B. BRYSON, RESPONDENT.

No. 4095

January 16, 1959                    333 P.2d 989

See also 72 Nev. 165, 298 P.2d 475.

*Vargas, Dillon & Bartlett* and *Alex A. Garroway*, of Reno, for Appellants.

*Sinai and Sinai*, of Reno, for Respondent.

## OPINION

By the Court, MERRILL, C. J.:

This appeal is taken by the defendants below from judgment for the plaintiff, rendered pursuant to a directed verdict. Appellants contend that factual issues remained for jury determination and that for this reason the trial court erred in directing a verdict for the plaintiff.

At issue is the title to a dairy herd which, when this

action was brought, was in the possession of defendants in Churchill County. Plaintiff, claiming title, sought the return of the herd or its value.

Title to the herd has been in litigation for over ten years before five different trial judges in three separate actions. This is the seventh occasion upon which recourse to this court has been had. With the passage of time the subject of the action has been altered. At the outset we were concerned with the fate of 41 cows and 2 bulls. We now learn that, through death and transfer, this herd no longer exists. We are now concerned solely with a judgment in the sum of $10,300 which has been determined to be the cash value of the herd when taken by the defendants.

Defendants assert ownership of the herd under any one of several legal and equitable principles. Our task on this appeal is simply one of factual analysis: to determine whether, under the evidence before the trial court, any one of these principles may be sustained.

On June 25, 1948 the plaintiff brought suit for divorce against her then husband, David Belanger. In that suit she alleged the herd to be her separate property. On September 14, 1948 she secured a decree to this effect. On July 31, 1948, and prior to entry of this decree, however, Belanger had purported to sell the herd to one Childers. Belanger has since departed and the proceeds of sale have gone with him. On August 5, 1948 Childers sold the herd to one Vrenon. On the same date, August 5, 1948 Vrenon sold the herd to the Bowlers, defendants in this action. After securing her decree of divorce plaintiff sought to recover her herd. She brought suit against Childers and Vrenon and obtained judgment. Since she had failed to join the Bowlers, this action was brought December 12, 1950.

This court has already determined that the Bowlers acquired no title through Belanger, since plaintiff was then the legal owner of the herd. Bowler v. Leonard, 70 Nev. 370, 269 P.2d 833. The question remaining is whether the Bowlers can be said to have acquired title through plaintiff.

The Bowlers contend that upon four different theories

the jury might have found that Childers acquired good title through the plaintiff. (1) That Belanger sold the herd as plaintiff's agent. (2) That plaintiff, by her conduct, should be held estopped to assert her title against Childers or the Bowlers. (3) That plaintiff ratified the sale by Belanger. (4) That plaintiff herself by direct contract with Childers in effect sold the herd to him. We shall deal with each of these contentions.

Upon their contention of agency the Bowlers point to the following facts. Prior to the sale by Belanger to Childers the herd had been kept upon the Belanger dairy ranch which was operated under Belanger's management. In his capacity as manager he had frequently bought and sold dairy cattle for himself and his wife. Plaintiff had never filed any inventory of separate property as provided by NRS 123.140: "A full and complete inventory of the separate property of the wife * * * must be made out and signed by her * * * and shall be recorded * * *."

Further, NRS 123.160 provides, "* * * the failure to file for record an inventory of her separate property in the office of the recorder of the county in which she resides * * * is prima facie evidence, as between the wife and purchasers in good faith and for a valuable consideration from the husband, that the property of which no inventory has been so filed * * * is not the separate property of the wife."

A further significant fact is that upon commencement of suit for divorce plaintiff had secured an injunction against Belanger dealing with the herd in any manner. Since this was found to interfere with the dairy operations to the mutual disadvantage of the parties, the injunction was dissolved. It was after this action was taken that Belanger sold the herd to Childers.

The Bowlers contend that through failure of the plaintiff to inventory this herd as her separate property, the herd has, as to third persons, acquired the status of community property over which the husband has the power of disposition; that Belanger must, therefore, be regarded as the actual agent of the plaintiff.

There can be little doubt that, prior to the commencement of the divorce action, Belanger acted as plaintiff's agent with reference to the herd and its management. By the assertion of her claims in the divorce action, however, plaintiff most clearly terminated any authority Belanger may have had to act in her behalf. Any actual authority which may theretofore have existed had been effectively and unquestionably terminated.

Nor can the failure to file an inventory be said to have created actual authority as a matter of law. Failure to file such an inventory is prima facie evidence that the property in question is not the wife's separate property. It is not, however, conclusive evidence. The statute essentially bears upon burden of proof. As stated in Petition of Fuller, 63 Nev. 26, 39, 159 P.2d 579, 585, "By failing to file such inventory the wife does not forfeit her separate property, and may show that certain property is her separate estate by other evidence, notwithstanding such failure."

This is precisely what occurred here. The fact has been conclusively established that, notwithstanding her failure to file the prescribed inventory, the property was in truth the separate property of the plaintiff. This being so, regardless of whether Childers was a purchaser in good faith or not, Belanger cannot be said to have had actual authority to dispose of the herd as though it were community property.

We conclude that there is no evidence to support the Bowlers' contention that Belanger acted as plaintiff's actual agent in selling the herd to Childers.

The Bowlers next contend that, regardless of any lack of actual authority, Belanger possessed ostensible or apparent authority to deal with the herd as plaintiff's agent; that Childers as a reasonably prudent man was entitled to conclude from all the facts and circumstances of which he had knowledge that Belanger was so authorized; that if failure to file an inventory did not create actual authority, it did create apparent authority.

Further facts must be considered in connection with these contentions.

Childers testified that he had no knowledge of the divorce action having been brought; that he had made his deal with Belanger in all good faith, giving his check for the purchase price. The check was to Belanger alone. When the check reached the local bank, upon which it was drawn, the bank manager questioned the authority of Belanger to sell the herd for himself. In conference with Childers and Belanger the manager suggested that the plaintiff should have a right to participate. Belanger protested this. He advised that while an injunction against his disposing of the herd had once been issued, it had been set aside. Childers confirmed this fact by a telephone call to the presiding district judge. Childers testified that the judge had told him that it was proper for him to proceed with Belanger. However, on cross examination, he could not state whether the district judge understood that the plaintiff was not a party to the sale.

Further, Childers testified that after the divorce decree had been handed down and he had advised plaintiff of the fact of the sale by Belanger, plaintiff had recognized that it was "a legitimate deal" and had stated that she would try to locate Belanger and get the money back if Childers would call the deal off; that Childers had agreed not to take the cattle for a few days; that plaintiff had then agreed that he could take them if she failed to return his money; that he had taken the cattle a few days later; that plaintiff had recognized his right to take the herd in that she had later called at his place of business, not to protest the taking of the herd but to recover certain milking pails.

It should be enough to dispose of the Bowlers' contention of apparent authority to point out that Belanger was not purporting to act as plaintiff's agent but for himself. The bill of sale was signed by him as owner. The check was made out to him alone.

There are further obstacles, however, which also dispose of the Bowlers' contention that plaintiff should, by her conduct, be held estopped to assert her title.

Any appearance of authority in Belanger was not created by the plaintiff. Childers cannot be said to have relied to his detriment upon any conduct or representation of the plaintiff. His knowledge of the existence of an injunction, even though it had been set aside, gave him notice that a dispute between the plaintiff and Belanger existed with reference to the herd. Any appearance of authority which theretofore might be said to have existed, should have been dissolved by this knowledge. Further, had he followed up his knowledge he would have learned the terms upon which the injunction had been set aside. Restraint still remained. It was clear from the order dissolving the injunction that Belanger had no authority to sell the herd either as principal or as agent. The fact that Childers' conversation with the district judge may have led him to believe otherwise cannot be attributed to plaintiff. Childers relied not on her acts but on his conversation with the judge.

Nor can the subsequent acts of plaintiff when Childers sought to take possession of the herd be said to create an estoppel. Childers did not change his position in any respect in reliance upon these acts. His detriment had already been suffered.

We conclude that there is no evidence to support the Bowlers' contentions that, in dealing with Childers, Belanger was the ostensible agent of plaintiff or that plaintiff should be held estopped to assert her title against Childers. Nor is our attention directed to evidence of any independent reliance by Vrenon or the Bowlers upon conduct of the plaintiff which might be held to create an estoppel.

The Bowlers next contend that plaintiff's conduct and statements to Childers at the time Childers sought to take possession of the herd amounted to ratification of the sale to Childers.

Since Belanger was not purporting to act as plaintiff's agent, however, these acts and statements could not amount to ratification. Harrah v. Specialty Shops, Inc., 67 Nev. 493, 221 P.2d 398. See Restatement of the Law,

Agency, sec. 85. Accordingly we must reject this contention.

Finally the Bowlers contend that these same acts and statements demonstrate that plaintiff had entered into a direct contract with Childers and had in effect herself sold the herd to him.

No consideration for a contract appears, however. Plaintiff certainly received no benefit and Childers suffered no detriment. The Bowlers contend that Childers' leaving the cattle with plaintiff until she had attempted to reach Belanger constituted consideration. Childers, however, had no right to take the herd. He did not forebear from the exercise of any right possessed by him. This contention, too, we must reject.

We conclude that the Bowlers have failed to present any evidence to support their claim of ownership. Plaintiff was, then, entitled as a matter of law, to judgment reimbursing her to the extent of the value of the herd.

The value was fixed, by jury verdict, at $10,300 which was the sale price in the Vrenon-Bowler transaction. The Bowlers contend that this judgment should be reduced by the sum of $3,100.

At the time of the Belanger sale to Childers there was a mortgage against the herd in the sum of $3,100. Of the price paid by Childers $3,100 went to discharge this mortgage. During the course of suit below Childers assigned his claim in this amount to the Bowlers. The Bowlers sought to amend their answer to allege this fact. Their motion was denied. Plaintiff claims that this was proper for the reason that the statute of limitations had run against the assertion of any counterclaim or setoff.

The $3,100 claim did not, however, create an independent right of recovery in Childers or the Bowlers. Any rights against the plaintiff which such claim might create were wholly dependent upon the plaintiff's prevailing in this action. The claim relates, rather, to the extent of injury actually suffered by the plaintiff—to the

value of her interest in the herd at the time of conversion. To permit her to recover the full value of the herd without deducting the sum of $3,100 would be to permit her to recover a loss which she has never suffered. Judgment should, then, be reduced in the sum of $3,100.

It is ordered that judgment in favor of respondent Stella B. Leonard be modified by reducing it from the sum of $10,300 to the sum of $7,200. As so modified, judgment affirmed. No costs are allowed.

MCNAMEE and BADT, JJ., concur.