Vincent J. **CURTIS**, et al., **Plaintiffs,**

v.

**RADIO REPRESENTATIVES, INC., Defendant.**

**Civ. A. No. 87–1534–OG.**

United States District Court, District of Columbia.

Oct. 13, 1988.

Robert Adler, Washington, D.C., for plaintiffs.

Lee T. Ellis, Jr., Baker & Hostetler, Washington, D.C., for defendant.

## MEMORANDUM

GASCH, Senior District Judge.

### INTRODUCTION

This matter comes before the Court on plaintiffs' motion for summary judgment. Plaintiffs, co-partners in the law firm of Fletcher, Heald & Hildreth, brought this action to recover monies allegedly due and owing for professional services rendered by plaintiffs. Defendant does not dispute that legal services were rendered, nor does it dispute the hourly rates charged, the number of hours billed, or the expenses charged. The parties do not agree about whether defendant agreed to pay interest on the outstanding balances of three of its accounts.

Defendant also alleges in a counterclaim that plaintiffs represented competitors of defendant at the same time they represented defendant, such that a conflict of interest existed among plaintiffs' clients. Defendant, accordingly, seeks a disgorgement of all fees that were earned through plaintiffs' representation of the defendant.

### FACTUAL BACKGROUND

Defendant originally retained plaintiffs' law firm, which specializes in representation of entities before the Federal Communications Commission ("FCC"), in December 1980. Defendant indicates that one of its representatives "specifically asked the Plaintiff's law firm, prior to retaining their services, whether they represented any of Defendant's competitors and made clear that such representations would be unacceptable to them." Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment ("Opposition") at ¶ 5. Defendant further asserts that "plaintiff never disclosed, let alone discussed, the firm's

representation of Defendant's competitors with Defendant...." *Id.* Plaintiffs neither admit nor expressly deny this assertion at this time. Plaintiffs' Reply to Defendant's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment ("Reply") at 3.

The fee agreement entered into between plaintiffs and defendant was that the law firm would be compensated on an hourly basis, charging current rates for work performed by lawyers and paralegals. In addition, plaintiffs were to be reimbursed their out-of-pocket expenses. Plaintiffs' Statement of Material Facts As To Which Plaintiffs Contend There Is No Genuine Issue at ¶ 4; Defendant's Statement of Material Facts in Dispute ("Defendant's Facts in Dispute") at ¶ 1.

Between November 1981 and March 1986, plaintiffs represented defendant in various matters before the FCC and on related legal issues. Most of the legal work pertained to representing defendant in a contested radio license proceeding before the FCC. Plaintiff was successful in securing for defendant the license for a station in Santa Ynez, California. Plaintiffs subsequently filed and pursued an application to move the license to Orcutt, California. This is not disputed.

Four separate billing accounts were established by plaintiffs for services performed for defendant. Plaintiffs indicate that beginning in February 1985, they began charging interest on two of the accounts (18225 and 18226) at the rate of one percent (1%) per month on all balances sixty (60) days or more in arrears. The same interest charges began on account 18228 in November 1985, sixty (60) days after charges were first made on this account. Plaintiffs' Motion for Summary Judgment ("Motion") at 9. Defendant does not dispute that interest was billed, nor does defendant assert that it did not receive statements from plaintiffs. Defendant also does not claim that it was unaware that interest charges were being made. Defendant, however, "denies that such interest was agreed upon by the Defendant." Defendant's Facts in Dispute at 1.

No interest was charged by plaintiffs on the fourth account (18227) because plaintiffs agreed with defendant to waive interest charges in exchange for defendant's payment of $500.00 per month against the outstanding balance of that account. Defendant made regular payments on that account for several months, but discontinued payments after November 30, 1985. Motion at 9–10. Plaintiffs also represent that as of August 31, 1986, the account balances of the first three accounts discussed above (18225, 18226, and 18228), including interest billed to that date, were as follows:

| Account No. | Balance |
| --- | --- |
| 18225 | $15,188.12 |
| 18226 | 2,603.71 |
| 18228 | 2,788.71 |

Motion at 9. Defendant does not dispute these amounts. Plaintiffs also indicate that the balance of account number 18227, as of November 30, 1985—the date of the last payment—was $10,405.10. Motion at 9. Defendant also does not dispute this amount.

The defendant asserts that during the course of plaintiffs' representation of defendant, several conflict of interest situations arose. The defendant's claim can best be analyzed in four parts. The first three parts of defendant's claim allege very general conflicts with licensees of stations that defendant considered to be competitors. The fourth part of defendant's claim is more specific. The alleged conflicts were with the following parties:

(1) Mr. James M. Hagerman, the licensee of radio stations KSMA and KSMA–FM in Santa Maria, California. Plaintiffs admit that they represented the licensee of these stations prior to June 1980, but deny that they represented him on any matters during the time they represented defendant. Motion at 16. Defendant contends that it considers these stations to be among its "competitors." Defendant's Facts in Dispute at ¶ 4; Affidavit of Norwood J. Patterson at 6.

(2) The licensee of radio stations KUHL and KXFM in Santa Maria, California, which is owned primarily by Mr. Jim Rang-

er and his wife. Plaintiffs admit to representing the licensee of these stations throughout the time they represented defendant. Plaintiffs state that on this client's behalf, they assisted in preparation of license renewals, filings, and reports required by the FCC among other things. Motion at 14. Plaintiffs also assisted this client in attempts to sell the stations. *Id.* Plaintiffs represent that no conflicting or potentially conflicting legal interest existed between this client and defendant. *Id.* at 14–15. Defendant asserts that it considers these stations to be among its competitors. Defendant's Facts in Dispute at ¶ 4; Affidavit of Norwood J. Patterson at 6.

(3) Sainte Broadcasting Corp., licensee of KOJTA Low Power Television Station in Santa Maria, California. The plaintiffs' representation of this client consisted of filing the original application with the FCC in January 1981, filing several engineering amendments and supplements, filing a license application, and keeping the licensee apprised of developments regarding the applications. Motion at 15. Plaintiffs represent that no conflict or potential conflict existed between this client and defendant, especially because this client was a television station and defendant's representation was limited to radio matters. *Id.* at 15–16. Defendant asserts that it considers KOJTA to be a "competitor." Defendant's Facts in Dispute at ¶ 4; Affidavit of Norwood J. Patterson at 6.

The parties do not dispute the facts in (1), (2), and (3) above. Rather, the parties disagree about whether the plaintiffs' representation of other clients that defendant considers to be "competitors" creates a conflict or potential conflict of interest that falls within the proscription of the Model Code of Professional Responsibility.

(4) The last conflict alleged by defendant is the most complex and it is integrally related to (1) and (2) above. Mr. James Hagerman is a consultant and former owner of KSMA and KSMA–FM radio stations ((1) above). He was also a member of the Santa Maria's Park Commission. Mr. Jim Ranger and his wife are the principal owners of KUHL and KXFM radio stations ((2)

above). Defendant asserts that after it submitted its application to the Santa Maria Park Commission for a building permit for two new radio towers, Mr. Hagerman and Mr. Ranger led a determined and protracted opposition to construction of the radio towers. Defendant states that it sought plaintiff's advice concerning the temporary removal of Mr. Hagerman from the Park Commission and about the legality of the editorials broadcasted by Mr. Ranger on his radio stations in opposition to the towers. Opposition at ¶ 8 and Facts in Dispute at ¶¶ 5 and 6. Defendant asserts that plaintiffs' response was "cautious and slow and they ultimately advised the defendant that they could take no action against either Mr. Ranger or Mr. Hagerman." Opposition at ¶ 8. Plaintiffs "vigorously dispute the truth of these allegations...." Reply at 6.

Defendant's counsel represented to Magistrate Attridge at pretrial conference that this advice was sought from Mr. Frank Fletcher. At the time defendant allegedly sought advice from plaintiffs regarding these matters in April, 1986, Mr. Fletcher had retired from practice and no longer had any employment relationship with plaintiffs, except that plaintiffs retained Mr. Fletcher's name. Plaintiffs append to their Reply the declaration of John O'Malley, their office administrator, which states that the billing files and client files show no indication that legal advice was ever rendered with respect to these issues. Defendant does not allege that it was billed by plaintiffs for these services, nor does it allege that it suffered any pecuniary loss as a result of plaintiffs' alleged conduct.

## DISCUSSION

A motion for summary judgment is properly granted when "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). All undisputed facts and "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655,

82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

## I. *Remaining Facts in Dispute*

Three factual matters remain in dispute. First, did defendant expressly agree to pay interest on the unpaid balances of its accounts? Second, did plaintiffs fail to advise defendant at the time they were retained that they represented competitors of the defendant? Third, did Mr. Fletcher render legal advice to defendant regarding matters pertaining to Mr. Ranger and Mr. Hagerman's alleged opposition to defendant's radio tower construction? None of these controverted questions, however, present a genuine issue of material fact.[1]

### A. Defendant's Agreement to Pay Interest

Defendant does not dispute the hourly rate charged by plaintiffs, the number of hours billed for services rendered, or the expenses charged. The only issue remaining is whether the interest billed by plaintiffs on the unpaid balances of three of defendant's accounts was proper.

Defendant agrees that interest was charged on accounts 18225, 18226, and 18228, however, it denies that "such interest was agreed upon by the defendant." Defendant's Facts in Dispute at ¶ 1. Defendant does not dispute that it was aware that interest was being charged. In fact, plaintiffs indicate that "the law firm had agreed with Radio Representatives to waive such [interest] charges [on another account] in exchange for payment by the client of $500.00 per month. . . ." Motion at 9. Defendant does not dispute this. Clearly, that defendant entered into an agreement of this nature with plaintiffs establishes that defendant was aware that interest was being charged on the balances of its other accounts. Defendant does not assert that it ever objected to the interest charges on its accounts despite the fact that interest was billed by plaintiffs for several months. Defendant does not contend that the interest charges were unreasonable.

Defendant's only contention appears to be that it never *expressly* agreed to pay interest on the balances of its unpaid accounts. Express agreement is not required to validate the terms of a contract or to modify the terms of an existing contract. "The general rule of law is that contracts need not be express, but that acts which clearly express an intent to be bound will give rise to liability where all the elements of contract formation are present." *Bane v. City of Columbia*, 480 F.Supp. 34, 38 (D.S.C.1979). In this case, defendant's acts express a clear intent to be bound. Defendant clearly was aware that interest was being charged, defendant never objected to the charge, and defendant continued to avail itself of plaintiffs' services on a credit basis.

"[S]ummary judgment is proper where the facts are undisputed and only one conclusion may reasonably be drawn from them." *Flying Diamond Corp. v. Pennaluna & Co., Inc.*, 586 F.2d 707, 713 (9th Cir.1978). In this case, viewing the facts in the light most favorable to defendant, only one conclusion may reasonably be drawn with respect to this issue—that defendant impliedly consented to the plaintiffs' interest charges.

### B. Plaintiffs' Representation to Defendant at the Time of Retention

Defendant alleges that plaintiffs were clearly informed, at the time their law firm was retained, that any representation by plaintiffs of defendant's competitors was unacceptable to defendant. Plaintiffs assert that even if defendant's claim is true, the law firm acted properly because plaintiffs did not, in fact, represent competitors of defendant at the time of retention.

If the facts occurred as alleged by defendant and if defendant considered other clients of plaintiffs to be competitors, two matters which the Court does not presently decide, plaintiffs were untruthful with de-

---

1. Additionally, for purposes of this motion for summary judgment only, plaintiffs are willing to accept defendant's factual accounts of these disputed events with respect to the second and third disputed facts. Reply at 3, 6.

fendant. This Court certainly does not condone such attorney misconduct. The claim in this case, however, involves conflict of interest—not fraudulent procurement of representation. Whether plaintiffs were forthright with defendant is not relevant to whether a conflict of interest in fact existed.[2] Defendant alleges no other cause of action that would allow it to recover for a fraudulent misrepresentation.

### C. Mr. Fletcher's Alleged Advice Regarding Matters Involving Mr. Ranger and Mr. Hagerman

Defendant's counsel indicated to Magistrate Attridge at pretrial conference that advice sought by defendant regarding temporary removal of Mr. Hagerman from the Park Commission and about the legality of editorials broadcast by Mr. Jim Ranger was allegedly obtained from Mr. Fletcher. The parties do not dispute that Mr. Fletcher was retired from plaintiffs' firm at the time the alleged advice was rendered in April 1986. Although plaintiffs' firm retained Mr. Fletcher's name, Mr. Fletcher was no longer affiliated with the firm at that time. Confronted with this in open court, defendant's counsel did not indicate that any other attorney additionally had rendered advice to defendant.

■ Assuming that the facts occurred as alleged by defendant, no basis exists for holding plaintiffs liable for Mr. Fletcher's acts. First, Mr. Fletcher's acts are not imputed to plaintiffs merely because of his prior affiliation with the firm or because the firm retained his name.[3]

Even if Mr. Fletcher's acts could be imputed to plaintiffs, and even if his acts, *arguendo*, were improper, defendant would still be precluded from recovering for these acts for another reason—defendant has failed to allege that it has been damaged by these acts. Defendant, in fact, does not even assert that it has been billed for these alleged services.

Defendant relies on *Financial General Bankshares v. Metzger*, 523 F.Supp. 744 (D.D.C.1981), for support that "an appropriate sanction for breach of an attorney's fiduciary duties to his client is denial of compensation or return of fees already paid." *Id.* at 773. That decision was reversed, however, by the United States Court of Appeals for the District of Columbia Circuit in *Financial General Bankshares v. Metzger*, 680 F.2d 768 (D.C.Cir. 1982). That Court noted that the "District of Columbia courts have not foreclosed the possibility that, in an appropriate case, disgorgement of fees might be the appropriate remedy." *Id.* at 772. The Court of Appeals, however, stated critically that "[t]he District Court cited no District of Columbia cases, and we have discovered none, which award a monetary remedy to a client for an attorney's breach of fiduciary duty in the absence of proven pecuniary loss to the client or proven financial gain to the attorney." *Id.* Even if Mr. Fletcher's acts were improper and even if they could be imputed to plaintiffs, these acts are insufficient, standing alone, to entitle defendant to any monetary relief.[4]

## II. *The Conflict of Interest Issue*

### A. The Standard for Attorney Conduct

Courts have long acknowledged the impropriety of attorneys representing clients when a conflict of interest exists between the clients. *See Woods v. City National*

---

**2.** If a conflict existed and plaintiffs were claiming that defendant agreed to representation notwithstanding the conflict, what plaintiffs said or failed to say to defendant would, of course, be directly relevant.

**3.** Some courts recognize a theory of lingering apparent authority which binds a principal for the acts of his agent after termination of the agency if a third party who relies on the agent to his detriment has relied on the agent in the past and was not advised by the principal that the agency relationship had terminated. *See Federal Land Bank of Omaha v. Union Bank &*

*Trust Co. of Ottumwa*, 228 Iowa 205, 290 N.W. 512, 515–16 (1940); *see also Harrah v. Home Furniture, Inc.*, 67 Nev. 114, 214 P.2d 1016, 1017 (1950). Defendant, however, has not alleged facts sufficient to advance this theory.

**4.** Other courts have disallowed attorneys fees generated after a conflict of interest arose, but permitted an allowance for services rendered prior to the development of the conflict. *See Matter of Chicago & West Towns Railways, Inc.*, 230 F.2d 364, 369 (7th Cir.1956).

*Bank & Trust Co. of Chicago,* 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941). A conflict of interest between clients can potentially compromise a lawyer's duty to serve each client with undivided loyalty and can deter the attorney from exercising independent, professional judgment with regard to each client.

The American Bar Association Model Code of Professional Responsibility ("Model Code"), which has been adopted by the District of Columbia, *see D.C. Court Rules Ann.,* Rule X (1986), contains many disciplinary rules ("DRs") that clarify the attorney's duties. Compliance with disciplinary rules is mandatory. The primary rule governing conflicts of interest between clients is DR 5–105, Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer. DR 5–105 of the Model Code provides in relevant part:

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

■ The primary prohibitions under this Rule, therefore, are (1) situations where the exercise of an attorney's independent professional *judgment will be or is likely to be affected adversely* by representation of another client, or (2) situations which would involve the attorney in *representing differing interests.* Merely representing multiple clients who have differing interests on matters wholly unrelated to their differing interests does not violate DR 5–105, so long as the lawyer's independent professional judgment is not likely to be called into question.[5]

Defendant relies on Ethical Consideration ("EC") 5–19 of the Model Code to establish that a lawyer should properly defer to the desires of a client when potential conflict of interest cases arise. Opposition at ¶ 5. EC 5–19 states in part: "Regardless of the belief of a lawyer that he may properly represent multiple clients, he must defer to a client who holds the contrary belief and withdraw from representation of that client." Notwithstanding the strong language used in this part of the Model Code, the defendant's reliance on this provision is misplaced.

The preliminary statement of the Model Code states clearly that adherence to ethical considerations is not mandatory. "The Disciplinary Rules, *unlike the Ethical Considerations,* are mandatory in character." *Id.* (emphasis added). "The Ethical Considerations are *aspirational* in character and represent objectives toward which every member of the profession should strive." *Id.* Part of the American Bar Association's purpose in promulgating the Model Code was to improve the public perception about the integrity of the legal

---

**5.** Defendant argues that DR 5–105(C) requires an attorney to obtain consent to continue representation of two or more clients who may have differing interests. Defendant misreads this provision. DR 5–105(C) expressly limits itself to "situations covered by DR 5–105(A) and (B)."

Thus, unless it is first determined that an attorney's independent professional judgment will be or is likely to be affected adversely, or that the attorney would be involved in representing differing interests, DR 5–105(C) imposes no duty to obtain consent.

profession. One way to promote this goal is to encourage attorneys to avoid situations which, although not in fact improper, nonetheless create the appearance of impropriety. Model Code, Canon 9 ("A Lawyer Should Avoid Even the Appearance of Professional Impropriety"). EC 5–19 serves such a purpose; this provision clearly was not intended, however, to permit one's client to decide the legal question of when multiple representation rises to the level of an impermissible conflict.

Defendant similarly relies for support on EC 5–14, which states in part that the "problem [of maintaining independence of professional judgment] arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant."[6] Similarly, EC 5–15 advises that "[a] lawyer should never represent in litigation multiple clients with potentially differing interests." That section goes on to state, however, that "there are many instances in which a lawyer may properly serve multiple clients having potentially differing interests in matters not involving litigation." Model Code, EC 5–15.

Under defendant's proposed interpretation of DR 5–105, an attorney who represented two different criminal defendants in two different cases would need to withdraw as counsel or obtain the consent of his clients if the clients were mutually involved in an unrelated contract dispute. This is simply not the law. The rule proscribes the attorney from "representing differing interests"—not from representing clients with differing interests unrelated to the attorney's representation, unless circumstances are such that the attorney's independent professional judgment will be or is likely to be affected adversely.[7]

---

**6.** Although this ethical consideration broadly advises attorneys against representing "clients with differing interests," clearly this provision is concerned only with situations where an attorney's judgment may be adversely affected or where an attorney's loyalty to a client may be diluted.

**7.** Distinguishable, of course, from the present case are cases where an attorney is representing

## B. Plaintiffs' Conduct in This Case

### 1. Representation of licensees of KUHL and KXFM radio stations and KOH-TA Low Power Television Station

■ Plaintiffs admit to having represented these licensees at the same time they represented defendant. However, plaintiffs deny having represented these licensees in any proceedings in which defendant had a conflicting or potentially conflicting interest. Defendant does not refute this with any facts; rather, the defendant merely states through the affidavit of Mr. Norwood J. Patterson, an authorized representative of defendant, that defendant considers these stations to be competitors. Patterson Affidavit at ¶ 6. Standing alone, defendant's bare allegation that it considers these stations to be competitors is not sufficient to establish a violation of DR 5–105. See D.J. Horan & G.W. Spellmire, Jr., *Attorney Malpractice: Prevention and Defense* 17–1 (1987) ("the fact that an attorney is simultaneously representing two companies that are competitors in the same industry does not itself establish an actionable breach of an attorney's fiduciary duty").

The Court does not hold that a potential conflict of interest could never develop between the clients of an attorney whose work is limited to communications law. In fact, the affidavits of Mr. Eugene F. Mullin and Mr. Earl R. Stanley, both experienced communications attorneys, suggest that a conflict of interest between these types of clients could arise if objectionable electrical interference existed between two stations. See Motion: Affidavit of Eugene F. Mullin at 2–3; Affidavit of Earl R. Stanley at 2. Defendant does not assert, however, that such interference existed, or had the potential to occur at the time plaintiffs under-

---

a client in one matter and suing the same client on another unrelated matter. See *IBM Corp. v. Levin*, 579 F.2d 271, 277–83 (3d Cir.1978). As the Third Circuit Court of Appeals noted, "[a] serious effect on the attorney client relationship may follow if the client discovers from a source other than the attorney that he is being sued in a different matter by the attorney." *Id.* at 280.

took representation of defendant, nor does defendant assert that such a potential problem became apparent at any time throughout the course of plaintiffs' representation of defendant. In fact, defendant fails to point to *any* matter with which its interest conflicted with these other stations except as general business competitors.[8] Accordingly, the Court holds, as a matter of law, that no violation of DR 5–105 existed with respect to plaintiffs' simultaneous representation of these clients and defendant.

## 2. *Representation of licensee of KSMA and KSMA–FM*

Plaintiffs only represented the former licensee of these stations, Mr. Hagerman, *prior to* the time they represented defendant. Again, defendant does not point to any matters with which its interest conflicted with these stations other than as business competitors. Defendant does not allege any facts to suggest that the exercise of plaintiffs' independent professional judgment with respect to defendant's representation was potentially adversely affected by plaintiffs' former representation of this client. Accordingly, the Court can state as a matter of law that no violation of DR 5–105 existed with respect to this aspect of the representation.

## III. *Interest on Unpaid Accounts*

The Court determined that plaintiffs should be permitted to recover the interest they billed defendant on the unpaid balance of defendant's accounts. These balances are reviewed above.

Plaintiffs also are entitled to recover interest on the balances of defendant's unpaid accounts for the period between September 1, 1986 and the date of payment for accounts 18225, 18226, and 18228; and for the period between December 1, 1985 and the date of payment for account 18227.

The District of Columbia Code provides that:

> [i]n an action in the United States District Court for the District of Columbia ... to recover a liquidated debt on which interest is payable by contract or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable, at the rate fixed by contract, if any, until paid.

D.C.Code Ann. § 15–108 (1981). Accordingly, interest will be fixed at one percent (1%) per month—the rate defendant was billed by plaintiffs for the outstanding balance of its accounts.

## ORDER

Upon consideration of the plaintiffs' motion for summary judgment, the opposition thereto, the entire record herein and for the reasons stated in the attached memorandum, it is by the Court this 11th day of October, 1988,

ORDERED that plaintiffs' motion for summary judgment on the complaint be, and hereby is, granted; and it is further

ORDERED that defendant's counterclaim be, and hereby is, dismissed with prejudice, and that judgment is entered for plaintiff in the amount of Twenty Thousand Five Hundred Eighty Dollars and No Cents ($20,580.00) (collectively for defendant's accounts 18225, 18226, and 18228), plus interest at the rate of one percent (1%) per month from September 1, 1986 until the date of payment, and judgment is additionally entered for plaintiff in the amount of Ten Thousand Four Hundred Five Dollars and Ten Cents ($10,405.10) (for defendant's account 18227), plus interest at the rate of one percent (1%) per month from December 1, 1985 until the date of payment; and it is further

ORDERED, pursuant to Federal Rule of Civil Procedure 54(d), that plaintiffs are

---

**8.** Defendant alleges that a conflict of interest developed between it and Mr. Ranger, the licensee of KUHL and KXFM, over editorials Mr. Ranger was broadcasting in opposition to defendant's application for a permit to construct new radio towers. Defendant does not allege that plaintiffs represented Mr. Ranger with re-

spect to this controversy. This Court need not reach the question of whether, under DR 5–105, plaintiffs could properly continue to represent both defendant and Mr. Ranger after this controversy developed because of the disposition reached in Part I.C., *supra.*

authorized to recover their costs incurred in this litigation, and, accordingly, plaintiffs will submit to the Court within ten (10) days a compilation of costs incurred.