**Michael H. MOSS, Plaintiff,**

v.

**TACC INTERNATIONAL CORPORATION and Michael D'Amelio, Individually, and in his capacity as an officer and director of TACC International Corporation, Defendants.**

**Civ. A. No. 91–10270–C.**

United States District Court,
D. Massachusetts.

Oct. 29, 1991.

Brian Doherty, Doherty Professional Ass'n, Hampton, N.H., for plaintiff.

Stephen M. Woodworth, Lynch & Lynch, Brockton, Mass., for defendants.

## MEMORANDUM

CAFFREY, Senior District Judge.

This case arises out of a contractual dispute over an employment contract. Employee-plaintiff Moss, former Director of Sales at TACC International Corporation ("TACC"), alleges that TACC terminated him on November 2, 1990 because his contract, which provided for his retention in the event of a sale of the corporation, was detrimental to a proposed sale of the corporation. In his three-count complaint, he alleges bad faith and unfair dealing and breach of contract against defendant TACC, and tortious interference with contractual rights against defendant D'Amelio, president of TACC. This case is now before the Court on a motion to disqualify defendants' counsel, John A. Eklund and Stephen M.A. Woodworth. To support the claim of disqualification of both attorneys, plaintiff alleges that there is a conflict of interest between the defendants. As a further basis for disqualification, plaintiff claims that Attorney Woodworth may be involved as a witness in this action. For the reasons set forth below, plaintiff's motion to disqualify counsel is denied.

### I.

 Two preliminary points should be noted at the outset. First, as a supervisor of attorney conduct, a district court has inherent authority to disqualify attorneys who appear before it. *Kevlik v. Goldstein,* 724 F.2d 844, 847 (1st Cir.1984); *Vegetable Kingdom, Inc. v. Katzen,* 653 F.Supp. 917, 921 (N.D.N.Y.1987); *Kalmanovitz v. G. Heileman Brewing Co., Inc.,* 610 F.Supp. 1319, 1322 (D.Del.1985) (citing *Richardson v. Hamilton International Corp.,* 469 F.2d 1382, 1385 (3d Cir.1972), *cert. denied,*

411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973)). Despite this authority, courts have been reluctant to disqualify attorneys because of the severe consequences of a disqualification. *Vegetable Kingdom,* 653 F.Supp. at 921; *see Kalmanovitz,* 610 F.Supp. at 1322. This reluctance stems from "the fact that disqualification has an immediate adverse effect on the client by separating him from the counsel of his choice." *Bd. of Educ. of N.Y. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979).[1] Also, many times such motions are made for tactical, not substantive, reasons and will most likely cause delay in the litigation. *Kevlik,* 724 F.2d at 849; *Nyquist,* 590 F.2d at 1246; *Vegetable Kingdom,* 653 F.Supp. at 921; *Borman v. Borman,* 378 Mass. 775, 787 n. 18, 393 N.E.2d 847 (1979). Thus, when deciding on a motion for disqualification, a court should proceed with caution. *Rizzo v. Sears, Roebuck and Co.,* 127 F.R.D. 423 (D.Mass.1989).

■ Second, the plaintiff in this action has standing to pursue a disqualification motion for the defendants' counsel based on DR 1–103(A). This disciplinary rule requires that an attorney inform a court of any actual or potential disciplinary infractions of which he has knowledge. *Kevlik v. Goldstein,* 724 F.2d 844, 847–48 (1st Cir.1984). With these as background, the Court will discuss plaintiff's specific arguments in turn.

### A.

■ Plaintiff first claims that attorneys Woodworth and Eklund should be disqual-ified from representing both defendants, TACC and D'Amelio, because of a conflict of interest. Plaintiff argues that the attorneys will inadequately represent both defendants by revealing the confidences of each client to the other, violating Canon 4 of the Model Code of Professional Responsibility. Model Code of Professional Responsibility Canon 4, S.J.C. Rule 3:07.[2] Canon 4 mandates that lawyers preserve the secrets and confidences of a client. *Id.* Plaintiff's argument, however, is more appropriately analyzed within the framework of the ethical rules pertaining to multiple client representation, set forth in Canon 5. Model Code of Professional Responsibility Canon 5, S.J.C. Rule 3:07; *see Curtis v. Radio Representatives, Inc.,* 696 F.Supp. 729, 734–35 (D.D.C.1988) (court discusses conflicts of interest with multiple clients in the context of DR 5–105).[3] Canon 5 dictates that lawyers must "exercise independent professional judgment on behalf of a client." Model Code of Professional Responsibility Canon 5, S.J.C. Rule 3:07. In so doing, under DR 5–105(C) of that rule, "a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each." Model Code of Professional Responsibility DR 5–105(C), S.J.C. Rule 3:07. As a safeguard to exercising independent judgment, each client must consent to the "representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." *Id.* Thus, the court must inquire whether the client fully understands the

---

1. The fact that the client in a civil case will lose his choice of counsel is not enough to exonerate conduct that violates ethical standards, however. As the First Circuit noted in *Kevlik,* in civil cases, where the sixth amendment is not implicated, it is "more important that unethical conduct be prevented than that defendant have an unfettered right to counsel of its choice." *Kevlik,* 724 F.2d at 849.

2. Local Rule 83.6(4)(B) of the United District Court for Massachusetts adopts the ethical standards of the Massachusetts Supreme Judicial Court. These standards, set forth in Rules of the Supreme Judicial Court 3:05, 3:07, and 3:08, are based on, but not identical to, the rules adopted by the American Bar Association in 1970 with its Code of Professional Responsibility and Canons of Judicial Ethics ("Code").

3. Plaintiff's reliance on *Kevlik v. Goldstein* in his brief furthers this point. In *Kevlik,* the First Circuit held that a law firm must be disqualified from representing the defendants, a town and the police officers, in a civil action under 42 U.S.C. § 1983 when one of the law firm's attorneys had given prior legal advice to one of the criminal *defendants in a related criminal matter.* The court discussed the obligations of an attorney to a former client regarding client-attorney privilege. The instant case can be distinguished because it relates to simultaneous representation of both TACC and D'Amelio, not, as in *Kevlik,* a former client-present client configuration.

potential or actual conflicts of interest and the effects on his representation. *See Dunton v. County of Suffolk*, 729 F.2d 903, 908 (2d Cir.1984) (court vacated judgment against police officer because his interests were not served by his attorney's simultaneous representation of him and the city).

In the instant case, under the first tier of the Canon 5 analysis, it appears that there is no present conflict of interest between the defendants. Given the nature of the plaintiff's claim regarding his termination, the attorneys can adequately represent the interest of both D'Amelio and TACC. According to attorney Eklund's affidavit, defendant's counsel strongly believed that "there was no conflict whatsoever" in representing both defendants. Affidavit of John A. Eklund ("Eklund affidavit"), June 12, 1991, at 2; *see also* Affidavit of Stephen M.A. Woodworth, June 13, 1991, at 2. It was also apparent from Eklund's affidavit that the firm had taken this potential conflict of interest issue seriously and had given the issue full consideration. Plaintiff argues, however, that confidential information from one defendant will be used "to the disadvantage of the other" and dual representation cannot be performed adequately by attorneys Eklund and Woodworth. He asserts that, because plaintiff's dismissal facilitated the sale of TACC, the dismissal worked to D'Amelio's monetary advantage, but was not in the best interest of TACC.

Despite this contention, plaintiff has not provided this Court with any proof to support his claim. First, the complaint itself does not support the theory that D'Amelio would benefit from the sale. It mentions nothing about a monetary gain by D'Amelio; it merely alleges that D'Amelio tortiously interfered with the employment contract. Furthermore, in his memorandum in support of disqualification, the plaintiff provides no evidence of a potential transfer of confidential information, and monetary gain, other than the unsupported statements mentioned above. Last, plaintiff's assertion that defendant D'Amelio would gain monetarily from the sale is refuted by the defendant's attorney Eklund in his affidavit. Eklund Affidavit, at 1–2. The affidavit states, in relevant part: "all of the stock of TACC is owned by Michael D'Amelio's father, Anthony D'Amelio, who approved the plaintiff's dismissal as Director of Sales of TACC prior to termination." *Id.* In summary, at the present time in the litigation, plaintiff bases his claim on assertions that are unsupported by the initial complaint or the memorandum in support of the motion to disqualify, and are refuted by defendant's specific statements in his affidavit.

As discussed above, with any multiple-client case, the Rules require that each client consents to the multiple client representation, after full disclosure of potential conflicts. Model Code of Professional Responsibility DR 5–105(C), S.J.C. Rule 3:07; *see Vegetable Kingdom*, 653 F.Supp. at 925. Woodworth and Eklund have not yet submitted any evidence indicating that they have apprised TACC and D'Amelio of potential conflicts that may arise as a result of the multiple representation. For example, they should have explained any potential conflicts in settlement interests of the two parties, or the potential conflicts that may arise when an attorney for the corporation also represents an employee.[4] In order to comport with the requirements of DR 5–105(C), this Court directs the defense attorneys to apprise both TACC and D'Amelio of the effect of the multiple representation on their independent judgment on behalf of each, unless it has already done so. It must then submit an affidavit by November 15, 1991, signed by both defendants, stating that they consent to such representation. Provided that both TACC and D'Amelio consent to have the attor-

---

**4.** As for the latter concern, the Model Code of Professional Responsibility states: "A lawyer employed or retained by a corporation ... owes his allegiance to the entity and not to a[n] ... employee ... or other person connected with the entity." Model Code of Professional Responsibility EC–18. Although the Ethical Con-

siderations are "not adopted as a rule" by the Supreme Judicial Court, they do form a "body of principles" from which this Court should rely to interpret the Canons of Ethics and Disciplinary Rules. S.J.C. Rule 3:07, Code of Professional Responsibility, Introduction.

neys represent them, after being fully advised of a potential conflict, plaintiff's motion for disqualification is denied.

### B.

■ Plaintiff's second basis for disqualification is that attorney Woodworth may be called as a witness in this case. According to DR 5-101(B), "a lawyer shall not accept employment in contemplated or pending litigation if he learns or it is obvious that he ... ought to be called as a witness." Model Code of Professional Responsibility DR 5-101, S.J.C. Rule 3:07. Plaintiff asserts that Woodworth, acting as TACC's counsel, participated in the retention of a broker for the sale of TACC. Because the TACC brokerage agreement is a "critical aspect of this litigation," argues the plaintiff, Woodworth ought to testify as a witness and should be disqualified as counsel. Plaintiff's Memorandum in Support of Plaintiff's Motion to Disqualify Counsel at 4. For this contention, plaintiff offers no evidence that Woodworth participated in this business transaction, resting his argument on mere assertions. The only evidence regarding Woodworth's participation in this transaction is provided by defendant Woodworth. In his affidavit, attorney Woodworth denies having been consulted by anyone at TACC relative to the alleged sale of the company or the retention of a broker. He further explains that he began working on this matter regarding the termination of Moss on January 8, 1991, well after the alleged business transaction and the termination date. Given that the plaintiff provides no evidence supporting his assertion, and attorney Woodworth refutes such participation, this Court denies plaintiff's motion for disqualification of Woodworth based on plaintiff's claim that the attorney will participate in the trial as a witness.

Accordingly, the plaintiff's motion for disqualification of defendants' counsel on both grounds is denied.