ADDAMAX CORPORATION

v.

OPEN SOFTWARE FOUNDATION, INC., Digital Equipment Corporation, Hewlett–Packard Company.

Civ. A. No. 91–11152–T.

United States District Court, D. Massachusetts.

Nov. 4, 1993.

---

Samuel Adams, Ralph T. Lepore, III, Keith C. Long, Warner & Stackpole, Boston, MA, James V. O'Gara, Alan R. Kusinitz, Patricia Oveis Kahn, Kelley, Drye & Warren, New York City, for Addamax Corp.

James C. Burling, Michelle D. Miller, Charles J. Gray, Peter A. Spaeth, Hale & Dorr, Boston, MA, for Open Software Foundation, Inc.

Eric Jaeger, Ropes & Gray, William L. Patton, Ropes & Gray, Boston, MA, Richard H. Alpert, Digital Equipment Corp., Maynard, MA, for Digital Equipment Corp.

Brian A. Davis, Robert S. Frank, Jr., Kevin P. Light, Nicholas J. Nesgos, Choate, Hall & Stewart, Boston, MA, Robert W. Sutis, Hewlett–Packard Co., Palo Alto, CA, Robert A. Skitol, Drinker, Biddle & Reath, Washington, DC, for Hewlett–Packard Co., Inc.

*MEMORANDUM AND ORDER ON PLAINTIFF ADDAMAX CORPORATION'S MOTION TO DISQUALIFY HALE AND DORR AS COUNSEL FOR DEFENDANT OPEN SOFTWARE FOUNDATION, INC. (# 133)*

COLLINGS, United States Magistrate Judge.

### I. *Introduction*

Premised upon the alleged unethical conduct of counsel, plaintiff Addamax Corporation (hereinafter "Addamax") has moved to disqualify the law firm representing defendant Open Software Foundation, Inc. (hereinafter "OSF"). The plaintiff's disqualification motion (# 133) has engendered the submission of a memorandum of law in support including nine exhibits (# 134), an opposition memorandum incorporating twenty-one ex-

hibits (# 151), a reply brief appending four additional exhibits together with an affidavit (## 158, 161) and a surreply in opposition annexing yet another four exhibits plus a counter-affidavit (## 163, 164, 177). The sheer volume of these filings, which in toto measure slightly under three inches in thickness, is indicative not only of the gravity of the issue at hand, but also the intensity with which this entire case has been litigated.

## II. *Background*

For contextual purposes, an abbreviated review of the historical facts of this complex antitrust action is warranted. Addamax is an independent software developer that is in the business of developing and licensing security or trusted UNIX operating software to computer hardware vendors and others. Formed in 1988 by seven prominent computer hardware manufacturers ("the Sponsors"[1]), OSF is a not-for-profit, non-stock membership corporation. According to Addamax, OSF allegedly is an illegal joint venture and cartel through which its Sponsors act to unlawfully restrain trade, substantially lessen competition among purchasers of software, drive independent software developers out of business and essentially strengthen their own market positions.

In developing an operating system called OSF/1, OSF engaged in a request for technology process through which it solicited proposals for software components, including security software, of the operating system. Although Addamax participated in the process by submitting a proposal for its product, OSF ultimately selected the security software of its competitor, SecureWare, Inc., for incorporation into OSF/1.

From the outset, the parties have been in conflict with respect to the breadth of discovery to be undertaken in this case. The defendants espoused the view that only information relating to OSF/1 and trusted UNIX software was relevant to the plaintiff's claims. Addamax, on the other hand, argued that information regarding OSF's dealings with other independent software developers, as well as its selection processes for other

component software technologies, was discoverable.

When this quintessential discovery issue could not be resolved informally, Addamax filed motions to compel against each of the defendants. In support of its position, Addamax submitted an affidavit of one David Andrus. (# 51) Mr. Andrus is the Chairman of the Board of Netwise, Inc. (hereinafter "Netwise"), an independent software vendor that participated in OSF's request for technology process for the distributed computing environment ("DCE") technology component for OSF/1. Inter alia, Mr. Andrus' sworn statements corroborated certain key allegations in Addamax's complaint. Of particular significance to the instant motion, Mr. Andrus affirmed under oath that:

> ... At various times during the DCE/RFT (DCE request for technology process) Netwise heard from both OSF members and independent sources that the DCE/RFT was "wired" in favor of the Sponsors' technology. Moreover, Netwise has since learned that the OSF DCE Technology Criteria document was drafted by a committee dominated by OSF sponsors. As a result of the DCE Technology Criteria document, which defines the specifications for the technology to be acquired, (sic) was skewed in favor of the Sponsors' DCE technology offering. Subsequently, OSF announced a pricing model for DCE technology in which it carried out its threat to price this technology far below its market value. As a result, Netwise and other ISV's (Independent Software Vendor) have been substantially foreclosed from the market for DCE technology.

Affidavit of David Andrus, # 51 at pp. 3–4. Relying in part on the Andrus affidavit, the Court allowed the motions to compel to the extent that the parameters of discovery were defined to include other specified software technologies. (*See* # 63)

Thereafter in September of 1992 Addamax noticed Mr. Andrus' deposition for either late October or early November. On or about September 28, 1992, OSF served a subpoena duces tecum on Netwise commanding the

---

1. Defendants Digital Equipment Corporation, Inc. and Hewlett–Packard Company were among the founding Sponsors of OSF; both corporations currently continue to be sponsors.

production of documents approximately two weeks in advance of the scheduled Andrus deposition. (# 151, Exh. 3) Counsel for Netwise responded to the subpoena by interposing objections pursuant to Fed.R.Civ.P. 45(c)(2)(B) including that the subpoena was overbroad, unduly burdensome and designed to harass in that the documents sought were irrelevant, privileged and constituted, in part, confidential business information. (# 151, Exh. 4)

A series of communications ensued between counsel for OSF and counsel for Netwise in order to address the third-party's objections to the document production. The instant motion is predicated upon the contents of a letter dated October 21, 1992 wherein Charles Gray, Esquire of Hale and Dorr, counsel for OSF, memorialized the substance of an October 16th telephone conversation that he had had with Attorney David Furbish, counsel for Netwise. In addition to recapitulating the parties' discussion regarding specific document requests and OSF's basis for seeking certain categories of documents, Attorney Gray wrote as follows:

As we discussed, OSF would have preferred to avoid extensive discovery from Netwise. Unfortunately, however, Addamax has made specific allegations involving Netwise and David Andrus, Netwise's Chief Executive Officer, has filed an affidavit on behalf of Addamax, thereby interjecting Netwise into the pending litigation. In addition, Larry Lytle, a former employee of Netwise, has testified at considerable length about Netwise's involvement with both Addamax and OSF. For these reasons, and because Netwise has contributed to funding Addamax's litigation expenses, OSF has been forced to pursue the production of all relevant, responsive documents in the possession of Netwise.

\*   \*   \*   \*   \*   \*

Again, OSF would prefer to avoid seeking extensive discovery from Netwise to defend the suit brought by Addamax. One way for Netwise to obviate the need to produce documents relating to its products would be to persuade Addamax to drop its allegations concerning Netwise and the Distributed Computing Environment ("DCE") selection process. Alternatively, OSF might agree to withdraw its request for these documents if Netwise were willing to sign an affidavit recanting the testimony of Mr. Andrus in his affidavit. For example, in lieu of the documents requested, OSF would accept an affidavit from Mr. Andrus stating in substance that he has no evidence of bias or unfairness in OSF's selection process and that OSF in fact did not destroy Netwise's market for its RPC technology.

Plaintiff Addamax Corporation's Memorandum, # 134, Exh. F at pp. 1 and 3.

Despite continued negotiations, OSF and Netwise were unable to reach accord on the scope of the subpoena.

On November 17, 1992, OSF filed a motion to compel the production of documents from Netwise in the United States District Court for the District of Colorado. Among the exhibits appended to OSF's memorandum in support were copies of correspondence from OSF's counsel to Netwise's counsel, including a copy of the October 21st letter. (# 151, Exh. 8) One of the arguments raised by Netwise in opposition to the motion to compel was based on the subject letter. Netwise contended that

The subpoena duces tecum has been served upon Netwise by OSF for obviously improper reasons. Netwise's Chairman, David Andrus, and a former Netwise employee, Larry Lytel (sic), have attested to facts that tend to support the plaintiff's claims. OSF would prefer that those facts remain undisclosed. In fact, OSF's counsel has represented that if David Andrus were to "recant" the testimony in his declaration, OSF would withdraw its subpoena. *See* OSF Exh. D at p. 3. Hence, the subpoena has been served by OSF upon Netwise to retaliate against Netwise and harass it for submitting evidence that may support the plaintiff's case against OSF.

Defendant Open Software Foundation's Opposition, # 151, Exh. 9 at p. 2.

A hearing on the motion to compel was held on December 10, 1992 before United States District Judge Edward Nottingham in Denver. After affording counsel for OSF

and Netwise the opportunity to present their respective positions, Judge Nottingham focused upon the October 21st letter.

> THE COURT: Mr. Gray, the sole issue I want you to address is your letter. This is on the cusp of suborning perjury, and I—I mean, at first glance, it appears to me to be shocking that you would agree—I thought it was an exaggeration when I read it in the—in their memorandum, but it does say, and I quote: "Alternatively, OSF might agree to withdraw its request for these documents if Netwise were willing to sign an affidavit recanting the testimony of Mr. Andris (sic) in his affidavit." I mean, it sounds like to me if you will take back what you said under oath previously, we'll let you out from under this subpoena.
>
> MR. GRAY: Well, Your Honor, our view on that is this, and it's that initially when we presented it to the judge in Massachusetts, it was that Netwise really had no involvement in this lawsuit, and this was a fight between OSF and Addamax. Unfortunately, the judge ruled against us, and Netwise filed an affidavit and has been deposed, interjecting themselves into this suit.
>
> THE COURT: Well, I understand, but that isn't the—that doesn't answer the question, though.
>
> MR. GRAY: We have substantial evidence supporting our claim that his affidavit is false. The history and the politics behind this lawsuit and behind Netwise's involvement supports that, as well as testimony we have from other witnesses in this lawsuit. Such a statement was not made lightly. It is not our practice to make such statements. We do not do this frequently, but I believe if Your Honor understood the history of the relationship between Addamax, Netwise, OSF and its sponsors, as well as some other very large computer companies, such as Sun Microsystems, who, Your Honor is not aware of this, but not only has Netwise contributed $5,000 to this lawsuit, Sun Microsystems, who in public is OSF's archenemy, has contribut-

ed $7.5 million to pay lawyers fees to bring this case against OSF. Netwise and Sun are business partners. The relationship for years and years has been to put OSF out of business. We have information from Sun and other places supporting our claim there. That was not made lightly, Your Honor, and I understand that because you're unfamiliar with it, it probably took you by some surprise.

Plaintiff Addamax Corporation's Memorandum, # 134, Exh. H at pp. 17–19.

Following this colloquy, Judge Nottingham granted the motion to compel, concluding that the documents sought fell within the boundaries of relevance as previously defined by this Court. After orally ruling on the motion, Judge Nottingham again addressed Attorney Gray, stating "[a]nd Mr. Gray, I admonish you about writing letters like that. That's pretty close to the line, at least when somebody looks at it, it's close to the line; and again, I recognize I don't have much familiarity with the litigation." (# 134, Exh. H. at p. 22)

Within one month after the motion hearing in Colorado, Addamax moved to disqualify Hale and Dorr as counsel for OSF based upon the purported unethical conduct of Attorney Charles Gray in drafting the October 21, 1992 letter.

### III. *The Motion to Disqualify*

█ It is axiomatic "that the district court has the duty and responsibility of supervising the conduct of attorneys who appear before it." *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1 Cir.1984) (citations omitted). Concomitant with that responsibility, the court is cloaked with the inherent authority to disqualify attorneys based on actions that violate professional ethical standards.[2] *Moss v. TACC International Corporation*, 776 F.Supp. 622, 623 (D.Mass., 1991) (citations omitted). This is not a power lightly wielded; the disqualification of a litigant's chosen counsel is undeniably a harsh measure. Moreover, as acknowledged by the First Circuit:

> are based upon the 1970 version of the ABA Code of Professional Responsibility and Canons of Judicial Ethics.

---

**2.** Local Rule 83.6(4)(B) of the United States District Court for the District of Massachusetts adopts the ethical requirements and rules of the Massachusetts Supreme Judicial Court, which

We are aware that disqualification motions can be tactical in nature, designed to harass opposing counsel, and have, therefore, kept in mind that "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." Preamble to Model Rules for Professional Conduct.

*Kevlik v. Goldstein, supra,* 724 F.2d at 848; *Moss v. TACC International Corporation, supra,* 776 F.Supp. at 624.

Bearing these weighty considerations in mind, the late Judge Caffrey's advice is sage: "when deciding on a motion for disqualification, a court should proceed with caution." *Moss v. TACC International Corporation, supra,* 776 F.Supp. at 624 (citation omitted).

Addamax contends that in the October 21st letter, Attorney Gray made an "offer": If Mr. Andrus would sign a second affidavit recanting specific testimony contained in his first affidavit, OSF would withdraw its subpoena duces tecum. In Addamax's view, the suggestion that Mr. Andrus execute a new affidavit directly contradicting his earlier declaration made under oath was an attempt to subornate perjury.

To conclude that subornation of perjury has occurred, it must be presumed that Mr. Andrus testified truthfully in the first instance and, by means of his "offer", that Attorney Gray was trying to elicit testimony that he knew, or had reason to believe, was false. Addamax argues that at the time he wrote the letter, Attorney Gray had a basis for accepting the veracity of Mr. Andrus' statements. First, the declaration was signed under the pains and penalties of perjury. Second, at his deposition one Larry Lytle, a non-party witness, purportedly corroborated material aspects of the Andrus affidavit, which Attorney Gray himself acknowledged in the October 21st letter. (# 161, Exh. A; # 134, Exh. F. at p. 2) Third, in March of 1992, a former employee of Addamax, Cynthia Misicko, confirmed one allegation of OSF's anticompetitive conduct in a conversation with Attorney Gray. (# 161, Exh. B)

Opposing the motion to disqualify, Attorney Charles J. Gray has filed an affidavit wherein he sets forth his reasons for believing on October 21, 1992 that Mr. Andrus' affidavit was inaccurate on material respects. (# 151, Exh. 2) Attorney Gray states that

> ... contrary to Mr. Andrus' assertion that OSF's activities foreclosed Netwise's market, I have been informed that Netwise had substantial business dealings with a number of key industry members, including Sun Microsystems, UNIX Systems Laboratories ("USL"), International Business Machine ("IBM") (one of OSF's founding sponsors), and a number of other computer companies.

Defendant Open Software Foundation's Opposition, # 151, Exh. 2, ¶¶ 13, 19.

In addition, Attorney Gray had in his possession an April 1990 document in which an OSF employee reported "Netwise (Andrus) gives OSF 'five stars' for assembling a fine team and conducting an unbiased and open technical evaluation." (*Id.* ¶ 14) Further, in November of 1991, Mr. Gray had received a memorandum from Jonathan Gossels, the OSF official who oversaw the DCE selection process, that purportedly specifically refuted a number of Andrus' statements. (*Id.* ¶ 16)

Apart from his affidavit, it is noted that in the text of the October 21st letter, Attorney Gray stated "Netwise and Sun have enjoyed a business relationship and Netwise continues to do business with Sun, indicating that OSF has *not* foreclosed Netwise's market as claimed by Mr. Andrus, Mr. Lytle and Addamax." (# 143, Exh. F. at p. 3) Attorney Gray also asserted that "OSF has information that Netwise is engaged in substantial business dealings with USL which undermine its assertion that OSF has destroyed Netwise's business." (*Id.*)

It is not within the Court's province to judge Mr. Andrus' credibility based upon his sworn written declaration, nor is it necessary. The credence to be accorded a witness' testimony is ultimately a determination for the factfinder at trial. Focusing on the issue at hand, while it is indeed true that Attorney Gray knowingly and willfully attempted to induce Mr. Andrus to change his testimony, it cannot be said that Attorney Gray knowingly and willfully attempted to induce Mr. Andrus to give false testimony

**510**

when he suggested that Mr. Andrus recant his first affidavit. Based upon the record, it appears that Attorney Gray had sufficient information in his possession on October 21, 1992 which, from his perspective, could reasonably lead him to question the accuracy of Mr. Andrus' sworn statements and to believe that the testimony to be given in a later affidavit would in fact be the truth.

■ Nor does the record support a finding that Attorney Gray violated DR 7–102(B)(2), which provides that when a lawyer "receives information clearly establishing that ... [a] person other than his client has perpetrated a fraud upon a tribunal [he] shall promptly reveal the fraud to the tribunal." Although the Court has found no Massachusetts decision construing this particular rule, interpreting the identical provision, the Second Circuit has concluded

> ... that the drafters intended disclosure of only that information which the attorney reasonably knows to be a fact and which, when combined with other facts in his knowledge, would clearly establish the existence of a fraud on the tribunal ... [W]e simply conclude that he must clearly know, rather than suspect, that a fraud on the court has been committed before he brings this knowledge to the court's attention.

*In re Grievance Committee of the United States District Court, District of Connecticut,* 847 F.2d 57, 63 (2 Cir., 1988); *see also, United States v. Del Carpio–Cotrina,* 733 F.Supp. 95, 99 (S.D.Fla., 1990). On October 21, 1992 Attorney Gray possessed information that could be construed to impugn the veracity of Mr. Andrus' sworn statements, but it clearly did not establish fraud.

■ Addamax also contends that Attorney Gray's action constituted a violation of DR 7–109(C) which provides, in relevant part, that "[a] lawyer shall not pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of his testimony ..." It is to be noted that the rule specifically uses the word "compensation." To equate the withdrawal of a subpoena to the payment of compensation strains

the plain language of the rule. It is presumed if the drafters of the rule wanted to include other quid pro quo, they would have used the word "consideration" or "thing of value" or some other more general terms. They did not do so. In the absence of any caselaw construing compensation to encompass more than what the plain meaning of the word connotes, the Court finds this disciplinary rule to be inapplicable to the circumstances of this case.

The inference should not be drawn from these conclusions that the Court finds Addamax's motion to be either frivolous or without reasonable foundation. From all that appears, Mr. Andrus is a crucial witness in Addamax's case. Notwithstanding counsel's protestations to the contrary, Attorney Gray did not merely seek "to obviate the need for certain discovery by having Netwise admit, agree or stipulate to facts which Mr. Gray believed to be true." (# 151 at p. 12) He first offered to withdraw a subpoena duces tecum that was viewed by the recipient to be overbroad and harassing if the third-party witness would recant sworn statements upon which the Court had previously relied in ruling on discovery motions. He then suggested the testimony to be incorporated into a second, contrary affidavit. Attorney Gray told Judge Nottingham that the "statement was not made lightly"; one infers from that representation that a conscious decision was made to put the matter to Netwise in the specific terms used. It is only in hindsight that the argument is made that the most for which Attorney Gray can be faulted is the use of "inartful language."

■ Attorney Gray's conduct is troubling and, at a minimum, gives the appearance of heavy-handedness in a quid pro quo deal with a non-party witness in the case. At its worst, the conduct evidences a specific intent to pressure a witness to change testimony given under oath by offering to withdraw a subpoena duces tecum which the witness at least viewed as extremely burdensome and costly. DR 1–102(A)(5) provides that "[a] lawyer shall not ... [e]ngage in conduct that is prejudicial to the administration of justice." The Massachusetts Supreme Judicial Court has noted that "[t]he proper adminis-

tration of justice embraces such matters as protection of the witnesses and the appearance of fairness." *Commonwealth v. Connor,* 381 Mass. 500, 504 n. 4, 410 N.E.2d 709, 711 n. 4 (1980); *Commonwealth v. Walter,* 396 Mass. 549, 558–559, 487 N.E.2d 513, 519 (1986) (quoting *Connor*). Attorney Gray may well have tread perilously close to or even crossed the line of propriety encompassed in this rule. However, I find that even if that boundary was crossed, in all the circumstances of this case, disqualification of Attorney Gray and his firm is not warranted.

Addamax urges the Court to apply a two-part test in determining whether to disqualify counsel:

First, although there need not be proof of actual wrongdoing, "there must be at least a reasonable possibility that some specifically identifiable impropriety did occur." Second, "a court must also find that the likelihood of public suspicion or obloquy outweighs the social interest which will be served by a lawyer's continued participation in a particular case."

*Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1210 (11 Cir., 1985) quoting *Woods v. Covington County Bank,* 537 F.2d 804, 813 and n. 12 (5 Cir., 1976) (citation omitted).

Assuming, arguendo, that the first requirement has been established, any negative impact which Attorney Gray's conduct may have on the public perception of, and trust in, the judicial system and the fair administration of the laws is outweighed by OSF's interest in retaining its counsel of choice.

Martin Ford, Vice President, Chief Financial Officer and Treasurer of OSF, states in his affidavit that Hale and Dorr has served as outside general counsel for OSF since its formation in 1988. (# 151, Exh. 1, ¶ 4) Through the years, OSF has relied heavily on the advice of Hale and Dorr in a wide range of legal matters. (*Id.*) The firm has represented OSF in this litigation since the time the action was instituted in April 1991. (# 151, Exh. 1, ¶ 6) Hale and Dorr has acquired a working familiarity with hundreds of thousands of documents as well as volumes of testimony relating to the facts and legal issues in this case. (*Id.*) The firm has filed a motion for summary judgment. Mr. Martin avers that "Hale and Dorr is OSF's counsel of choice for this case and for all its legal matters, and OSF's defense would be crippled, perhaps irreparably, if it were to lose them as counsel, particularly at this stage of the case." (# 151, Exh. 1, ¶ 7)

Based on this affidavit, and the Court's own knowledge of the complexity of this lawsuit, OSF has substantial and valid reasons for retaining its present defense counsel. It would be an onerous, if not impossible task for OSF to mitigate the loss of Hale and Dorr's expertise at this juncture. The potential of prejudice to OSF arising from the disqualification of its chosen counsel is enormous.

### IV. *Conclusion and Order*

In all the circumstances of this case, and for the reasons stated, it is ORDERED that Plaintiff Addamax Corporation's Motion to Disqualify Hale and Dorr as Counsel for Defendant Open Software Foundation, Inc. be, and the same hereby is, DENIED.

### V. *Referral for Investigation of Allegation of Misconduct*

This leaves the question of what the obligation of the Court is in the situation in which allegations of possible misconduct are made against a member of the Bar of this Court in connection with litigation before it. Local Rule 83.6(4), (5) (eff. 10/1/92) provides the answer. It reads, in pertinent part:

(4) *Standards for Professional Conduct*

(A) For misconduct defined in these rules, and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this Court may be disbarred, suspended from practice before this Court, reprimanded or subjected to such other disciplinary action as the circumstances may warrant.

(B) Acts or omissions by an attorney admitted to practice before this Court pursuant to Local Rule 83.6 or appearing and practicing before this Court pursuant to Rule 83.7, individually or in concert with any other person or persons, that violate the ethical requirements and rules con-

cerning the practice of law of the Commonwealth of Massachusetts, shall constitute misconduct and shall be grounds for discipline, whether or not the act occurred in the course of an attorney-client relationship.

\*    \*    \*    \*    \*    \*

(5) *Disciplinary Proceedings*

(A) When misconduct or allegations of misconduct that, if substantiated, would warrant discipline on the part of an attorney admitted to practice before this Court shall come to the attention of a Judge of this Court, whether by complaint or otherwise, and the applicable proceeding is not otherwise mandated by these rules, the Judge shall refer the matter to counsel for investigation and the prosecution of a form [sic] disciplinary proceeding or the formulation of such other recommendation as may be appropriate.

Emphasis supplied.

I believe that the facts as related herein give me no choice but to act pursuant to Rule 83.6(5). The instant motion contains allegations of misconduct, and the allegations have been substantiated at least to the extent that there is no dispute that Attorney Gray took the action alleged, i.e. that he wrote the letter to Netwise's counsel containing the language quoted at p. 507, *supra*. The allegations are of "misconduct" in that they may be a violation of DR 1–102(A)(5) as noted *supra* at pp. 510–11. I therefore must refer the matter to "counsel" [3] for "investigation and the prosecution of a form [sic] disciplinary proceeding or the formulation of such other recommendation as may deem appropriate."

Accordingly, the Clerk shall forward a copy of the within Memorandum and order and copies of all pleadings [4] filed in connection with the instant motion to counsel for the Board of Bar Overseers pursuant to Local Rule 83.6(5)(A).

---

**3.** I assume that the word "counsel" refers to counsel for the Board of Bar Overseers of the Commonwealth of Massachusetts.

**4.** Excepting # 177 which was filed under seal.