**RESOLUTION TRUST CORPORATION, as Receiver for Malibu Savings Bank, F.S.B., Plaintiff,**

**v.**

**FIRST OF AMERICA BANK, a national banking association, Defendant.**

No. 4:94–CV–83.

United States District Court, W.D. Michigan, Southern Division.

Nov. 2, 1994.

---

Hans J. Massaquoi, Lewis, White & Clay, PC, Detroit, MI, Steven Craig Morrison, Morrison & Lespier, Irvine, CA, for plaintiff.

John W. Allen, Howard & Howard, PC, Kalamazoo, MI, for defendant.

## OPINION

QUIST, District Judge.

The Court has before it defendant's Motion For a Protective Order. This motion seeks to have returned to the defendant a privileged letter that was inadvertently sent by defendant's counsel to the plaintiff's attorneys and all related material. Defendant also requests disqualification of plaintiff's attorneys from further participation in the case. The important facts are largely undisputed. The conclusions to be drawn from those facts are hotly contested.

In July 1994, defendant's law firm inadvertently sent a privileged communication to one of plaintiff's counsel. The Court has not read the document, but the parties agree that the document is a seven page letter from defendant's counsel to the defendant laying out the facts of the case to date and defense strategy. The plaintiff does not contest that the letter is privileged but claims that the letter simply contains information that the plaintiff would have discovered anyway—the gist of the Complaint, defendant's defenses, facts regarding previous dealings with a person, the need to take depositions, send inter-

rogatories, make dispositive motions, etc. The letter was clearly labeled on its face "*PRIVILEGED AND CONFIDENTIAL*", was directed to a Senior Vice President of defendant and contained the caption of the case. Apparently, the letter was not in its separate envelope.

The privileged letter was received by plaintiff's local counsel. After returning from vacation, plaintiff's lead counsel asked that the letter be forwarded to him so that he could obtain instructions from his client regarding a response. At that time plaintiff's lead counsel was unaware of American Bar Association (ABA) Formal Opinion 92–368 but was experienced in a similar situation. Plaintiff's lead counsel attempted to contact his client to inform the client of the disclosure and obtain instructions. (The client is, for all practical purposes, another attorney.) Lead counsel then researched the issue of what he should do with the letter and concluded that "even the inadvertent disclosure of attorney client privileged material terminated the privilege." After further consultation with the client, lead counsel "out of a sense of fairness" but with no sense of a duty, notified defendant's counsel that plaintiff had the letter.

After being notified that plaintiff had the letter, defendant's counsel asserted the authority of ABA Formal Opinion No. 92–368, demanded all copies of the letter, and asked that plaintiff's counsel be disqualified from further participation in the case. Plaintiff's lead counsel brought this request to the attention of plaintiff. Plaintiff has not returned the letter.

### Discussion

This Court has adopted as its formal rules of ethics those that are adopted by the State of Michigan. W.D.Mich.L.R. 17. The State of Michigan has largely drawn its Rules of Professional Conduct from the American Bar Association Model Rules of Professional Conduct. The Michigan Rule provides as follows:

**RULE 1.6  CONFIDENTIALITY OF INFORMATION**

(a) "Confidence" refers to information protected by the client-lawyer privilege un-

der applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

(b) Except when permitted under paragraph (c), a lawyer shall not knowingly:

(1) reveal a confidence or secret of a client;

(2) use a confidence or secret of a client to the disadvantage of the client; or

(3) use a confidence or secret of a client for the advantage of the lawyer or of a third person, unless the client consents after full disclosure.

(c) A lawyer may reveal:

(1) confidences or secrets with the consent of the client or clients affected, but only after full disclosure to them;

(2) confidences or secrets when permitted or required by these rules, or when required by law or by court order;

(3) confidences and secrets to the extent reasonably necessary to rectify the consequences of a client's illegal or fraudulent act in the furtherance of which the lawyer's services have been used;

(4) the intention of a client to commit a crime and the information necessary to prevent the crime; and

(5) confidences or secrets necessary to establish or collect a fee, or to defend the lawyer or the lawyer's employees or associates against an accusation of wrongful conduct.

(d) A lawyer shall exercise reasonable care to prevent employees, associates, and others whose services are utilized by the lawyer from disclosing or using confidences or secrets of a client, except that a lawyer may reveal the information allowed by paragraph (c) through an employee.

In 1992, the ABA Committee on Ethics and Professional Responsibility, citing Model Rules of Professional Conduct Rule 1.6, issued its Formal Opinion 92–368, which it summarized as follows:

> A lawyer who receives materials that on their face appear to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear they were not intended for the receiving lawyer, should refrain from examining the materials, notify the sending lawyer if the sending lawyer remains ignorant of the problem and abide the sending lawyer's direction as to how to treat the disposition of the confidential materials.

This Court sees no need to recite the ABA's analysis in support of its conclusions; that opinion is available to anyone who is interested. This Court agrees with plaintiff that the ABA's analogy to bailments is weak reasoning. But this Court agrees with the remainder of the reasoning and the ABA's conclusion.

In 1994, ABA Formal Opinion 94–382 addressed a similar question, with the difference that in 94–382 the Opinion assumed that an unauthorized sender intended the receiving lawyer to receive and make use of the transmitted documents.[1] Opinion 94–382 is noteworthy because it cites and disagrees with Michigan Bar Association Opinion CI–970,[2] which states as follows:

**CI–970**

> When an attorney comes into possession of an internal, private memorandum of the opposite party during litigation, and provided such attorney and his client did not in any fashion procure or participate in the removal of such document from the possession of the opposite party, such attorney may use the memorandum at trial to impeach the opposite party's witnesses if the

---

1. Formal Opinion 94–382 distinguishes 92–368 as follows:

   [In Formal Opinion 92–368], the sending party did not intend to transmit the privileged and/or confidential material to the receiving lawyer. In contrast, our present question assumes that the unauthorized sender indeed intended the receiving lawyer to receive and make use of the transmitted materials.

2. This Opinion construes a canon in effect before Michigan's adoption of the Rules of Professional Conduct in 1988. However, as to the point now before the Court, there is no substantial disagreement between the canons of ethics and rules of professional conduct.

court, after review of the memorandum, permits its use for impeachment purposes. Mere possession by an attorney of the opposite party's internal and private memorandum does not require withdrawal by the attorney from his representation of this client. (10–5–83)

The Michigan Opinion does not distinguish a confidential document sent to counsel inadvertently from a document sent by an unauthorized sender. Nor does it specifically refer to privileged communications. It appears that Michigan courts would allow, subject to judicial oversight, an attorney to use a private memorandum sent inadvertently as well as a private memorandum sent purposefully by an unauthorized sender. However, the use of such a document appears to be limited to impeachment.

Both parties have cited court precedent to support their respective positions as to waiver of privilege. Most of these cases discuss waiver of privilege as an evidentiary, as distinguished from an ethical, matter or they are factually inapposite. Plaintiff argues that the ABA Opinion 92–368 is only advisory. In any event, there does not appear to be any black letter rule regarding inadvertent disclosures. See, Barker, William T., *What About Inadvertently Disclosed Documents or Information?*, International Association of Defense Counsel, 60 DEF.COUNS.J. 613 (October 1993); McNeil, Heidi L., Littlefield, Christopher J., *The Inadvertent Disclosure of Privileged Documents,* State Bar Of Arizona, 30 Ariz.Att'y 10 (November 1993).

In this particular case, there was a single document that was clearly marked as privileged. The letter was sent by the attorney, not the client. The attorney who sent the letter did everything reasonably required to inform the world that the letter was protected by the attorney-client privilege by clearly marking the document as privileged. Lawyers are not required to stuff the envelopes and deposit the mail in order to protect the

privilege. The contents of the document indicate the privileged nature of the document—a letter from attorney to client. This was not a case wherein a legal assistant or lawyer was poring over tens of thousands of documents and ran across a few privileged documents among the many unprivileged documents. As soon as he was notified of the inadvertent disclosure, the defendant's attorney took immediate steps to rectify the disclosure.

In this Court's judgment, common sense and a high sensitivity toward ethics and the importance of attorney-client confidentiality and privilege should have immediately caused the plaintiff's attorneys to notify defendant's counsel of his office's mistake.[3] The lawyers who received the document must have known by the markings and the contents of the document that a clerk or secretary in the defendant's lawyer's office mistakenly included the privileged letter within the documents intended for the plaintiff's lawyers. Thus, plaintiff's lawyers must have known that neither the defendant nor its lawyer intended to waive the attorney-client privilege. While lawyers have an obligation to vigorously advocate the positions of their clients, this does not include the obligation to take advantage of a clerical mistake in opposing counsel's office where something so important as the attorney-client privilege is involved.

The question is, what to do about it. In this particular case, the Court believes that disqualification of plaintiff's counsel is not warranted. First of all, the cat is out of the bag. Even if plaintiff's counsel is disqualified, plaintiff itself (really a lawyer employed by plaintiff) already knows the contents of the letter. Also, this Court concedes that precedent did not give clear directions to plaintiff's attorneys. The plaintiff's attorneys did research the issue and reached a conclusion contrary to what this Court would

---

**3.** Heidi L. McNeil and Christopher J. Littlefield suggest the following:

> ... when confronted with an "obviously inadvertent disclosure," a prudent attorney may want to copy the inadvertently disclosed document, return the original and promptly file an in camera motion with the court seeking a

> declaration of waiver. This approach allows the attorney to preserve the argument that the applicable privileges have been waived, while ensuring that the lawyer has satisfied his or her ethical obligations as prescribed by the ABA Committee.
>
> *Id.,* n. 50.

hold regarding a waiver of the privilege. Arguably, there is a conflict between Michigan's interpretation of the rules and the ABA's interpretation. The ABA's interpretations are binding only on ABA members. Finally, defendant has not shown substantial prejudice by the inadvertent disclosure.

The Court will order that the original letter, all copies of the letter, and all notes relating to the letter be destroyed. Since the letter has already been read by counsel and client, this remedy might be ineffective. However, this remedy will at least prevent the letter from being used during depositions and at trial.

Plaintiff's motion to strike and for sanctions will be denied.

A separate Order will be entered.

### ORDER

For the reasons stated in the Opinion filed on this date,

**IT IS HEREBY ORDERED** that defendant's Motion for Protective Order (docket no. 10) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Plaintiff and its counsel shall immediately:

   (a) destroy the original and all copies of the subject correspondence;

   (b) destroy all copies of all notes, entries or other materials relating to the subject correspondence; and

   (c) certify that the acts required in subparagraphs 1(a) and 1(b) have been accomplished.

2. Defendant's motion to disqualify plaintiff's counsel is **DENIED.**

3. The subject correspondence shall not be directly used during any deposition or during the presentation of evidence in this case.

**IT IS FURTHER ORDERED** that plaintiff's Motions to Strike (docket no. 16) and for Sanctions are **DENIED.**