896 F.Supp. 53 (1995)
MILFORD POWER LIMITED PARTNERSHIP, by its general partner MILFORD POWER ASSOCIATES, INC., Plaintiff,
v.
NEW ENGLAND POWER COMPANY, Defendant and Plaintiff-in-Counterclaim,
v.
ENRON CORP., Enron Power Marketing, Inc., Jones Capital Corp., and Jones Medway, Inc., Third-Party Defendants.
Civ. A. No. 94-40180-NMG.
United States District Court, D. Massachusetts.
July 26, 1995.
*54 R. Robert Popeo, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, for Milford Power Ltd.
Michael P. Angelini, Vincent F. O'Rourke, Jr., Barry A. Bachrach, Mark W. Powers, Bowditch & Dewey, Worcester, MA, for New England Power Company.
Michael P. Angelini, Bowditch & Dewey, Worcester, MA, for New England Power Co.
R. Robert Popeo, Paul D. Wilson, Alan S. Gale, Joseph P. Messina, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, for Enron Corp., Jones Capital Corp.

MEMORANDUM AND ORDER
GORTON, District Judge.
The plaintiff, Milford Power Limited Partnership ("Milford"), brings this action against New England Power Company ("New England"), claiming, inter alia, fraud, breach of contract, negligent misrepresentation and violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1963. New England has denied Milford's claims and has filed a counterclaim against Milford and third-party claims against Enron Corp., Enron Power Marketing, Inc., Jones Capital Corp., and Jones Medway, Inc.
Unfortunately, the size of the record after only five months suggests that this case will be unduly protracted. Even more disturbing is the inauspicious manner in which the parties and their counsel have begun. This Memorandum and Order addresses what counsel for both parties have deemed the "celebrated" motions:
1) emergency motion of Milford for a protective order with respect to certain privileged documents inadvertently produced to New England;

*55 2) motion of Milford to disqualify Bowditch & Dewey;
3) motion of New England to impound certain documents produced by Milford; and
4) motion of New England to declare waiver, to dismiss, or, in the alternative, to disqualify [Mintz Levin].

I. BACKGROUND
Milford, an electric power producer, is a Massachusetts company with its principal place of business, a gas-fired power plant, in Milford, MA. The defendant, New England, a wholly-owned subsidiary of New England Electric System, is a regulated public utility engaged in the business of 1) generating and purchasing electric power, which it sells on a wholesale basis to affiliated retail electric utility companies, and 2) purchasing natural gas, which it uses as a fuel in its own power plants or sells to other power companies, such as Milford.
In December, 1989, New England agreed to buy 56% of the capacity and energy of the power plant that Milford had proposed to build in Milford, MA (the "Milford Plant"). Earlier in 1989, New England had decided to build a larger power plant (450 megawatts) of its own on Manchester Street in Providence, RI (the "Providence Plant").
Milford claims that:
1. in early 1990, New England became aware that its prior energy forecasts had been overstated,
2. New England concluded that it did not need energy from both the Milford Plant and the Providence Plant,
3. despite the lower energy forecasts, New England decided to proceed with its plan to develop the Providence Plant,
4. in order to obtain permission from the Rhode Island Energy Facilities Siting Board to build the Providence Plant, New England Power intentionally misrepresented the forecasts for energy demand in New England, and
5. because it no longer needed the 56% capacity of the Milford Plant, and because it had committed to buy that capacity at what turned out to be an inflated price, New England wrongfully attempted to cause Milford and the Milford Plant to fail.
New England denies Milford's claims and has filed a counterclaim against Milford and third-party claims against Enron Corp., Enron Power Marketing, Inc., Jones Capital Corp., and Jones Medway, Inc. In its counterclaim and third-party claims, New England alleges that Milford and its affiliates participated in a civil conspiracy to blackmail New England into buying either exorbitantly expensive electric power or the Milford plant itself. New England further claims that the third-party defendants and defendant-in-counterclaim are liable to it for defamation, abuse of process and breach of contract.
During the initial stages of this complex litigation, while the parties were conducting automatic discovery, pursuant to Fed. R.Civ.P. 26(a), Milford's counsel, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz Levin"), inadvertently produced eight allegedly privileged documents to New England's counsel, Bowditch & Dewey ("Bowditch"). Mintz Levin claims that 1) Bowditch had a duty to return the documents and 2) Bowditch breached its ethical obligations both by refusing to return the documents and by examining their contents. As a result, Mintz Levin has filed motions for a protective order and to disqualify Bowditch from representing New England in this case.
Bowditch opposes the motion for a protective order and argues that the documents at issue are not privileged because, among other reasons, they were prepared by an attorney, Mr. Edward Selgrade, in violation of New England's attorney-client privilege.[1] Selgrade has represented Milford in some capacity since 1989. In June, 1991, Selgrade joined the law firm of Tillinghast, Collins & Graham ("Tillinghast"), which has its main office in Providence, Rhode Island. Selgrade *56 established a Boston office for Tillinghast and assumed the title of "counsel."
Tillinghast has represented New England on regulatory matters for the past twenty years. When Selgrade joined Tillinghast in 1991, the law firm advised New England that some of Selgrade's clients, including Milford, had ongoing "business arrangements" with New England. Lacouture Aff. at ¶ 4; Selgrade Aff. at ¶ 5. Nevertheless, New England apparently consented to Selgrade's continued representation of Milford so long as Selgrade 1) did not work on any matters directly adverse to New England and 2) was "walled off" from confidential information relating to New England. Lacouture Aff. at ¶ 4; Selgrade Aff. at ¶ 5. Notwithstanding that agreement, Selgrade apparently continued to represent Milford openly in negotiations with New England.[2]
By February 4, 1994, Selgrade realized that Milford and New England were headed for litigation. At that point, he decided to submit his resignation to Tillinghast which officially took effect on March 1, 1994. During the several weeks before his official separation from Tillinghast, Selgrade prepared at least two of the documents inadvertently produced by Mintz Levin. The remainder of the subject documents were prepared after March 1, 1994.[3]
New England argues that the documents originally drafted by Selgrade and inadvertently produced by Mintz Levin are not privileged because Selgrade prepared those documents in violation of his attorney-client relationship with New England. New England further contends that Selgrade's conflict of interest and breach of ethics should result in a judgment of dismissal, or, in the alternative, the disqualification of Selgrade and Mintz Levin as attorneys for Milford.

II. DISCUSSION

A. Motion of Milford for a Protective Order
Milford seeks a Protective Order from this Court directing New England to return all copies of the eight allegedly privileged documents to Milford. Because this Court finds that those eight documents constitute attorney work product, the Court will allow the motion.
As this Court previously explained in a case very similar to this one, City of Worcester v. HCA Management Co., Inc., 839 F.Supp. 86 (D.Mass.1993), the work product doctrine, codified in Fed.R.Civ.P. 26(b)(3), safeguards the integrity of the adversarial process by protecting 1) documents or other tangible things, 2) prepared in anticipation of litigation, 3) by or for a party, or by or for a party's representative. Id. at 88 (citing Pasteris v. Robillard, 121 F.R.D. 18, 20 (D.Mass.1988)). A cursory examination of the eight documents at issue in this motion reveals that they are privileged work product. They are 1) documents, 2) prepared in anticipation of litigation, 3) by either Selgrade, Milford's attorney/representative since 1989, or an officer of Milford. See Pasteris, 121 F.R.D. at 20. Indeed, the eight documents bear the caption, in bold letters, "PRIVILEGED AND CONFIDENTIAL/ATTORNEY WORK PRODUCT." New England's argument that the documents "do not appear on their face, or otherwise, to be privileged" is without merit. The appropriately stamped documents, which include memoranda to Milford from its lawyer, Selgrade, clearly appear, on their face, to be privileged.
New England does not dispute that the documents are work product, but, relying on a line of cases emanating from Moody v. Internal Revenue Service, 654 F.2d 795 (D.C.Cir.1981), argues that Selgrade's conflict *57 of interest and unethical conduct vitiate the work product doctrine. The Court is not persuaded by New England's argument for four reasons:
1) New England advanced its argument that Selgrade engaged in unethical conduct only after it received and examined the eight documents at issue. New England bases its argument on the content of those documents. The documents, however, were inadvertently produced by Mintz Levin and appear, on their face, to be privileged. Bowditch, therefore, should have returned the documents to Mintz Levin before it examined them and thereby discovered the alleged unethical conduct. See ABA Comm. on Ethics and Professional Responsibility, Formal Op. 368 (1992) ("lawyer who receives materials that on their face appear to be ... confidential ... should refrain from examining the materials, notify the sending lawyer and abide the instructions of the lawyer who sent them").
2) In a similar context, the Supreme Court has held that "materials that have been determined to be privileged may not be considered in making the preliminary determination of the existence of a privilege." United States v. Zolin, 491 U.S. 554, 573, 109 S.Ct. 2619, 2631, 105 L.Ed.2d 469 (1989) (where the Supreme Court considered the crimefraud exception to the attorney-client privilege). In essence, New England bases its entire argument of unethical conduct/lack of privilege on the eight documents that were inadvertently produced to, and wrongfully examined by, Bowditch. Because those documents are privileged work product and should not have been examined in the first instance, they should not now be considered in determining the existence of such a privilege. See Id. Consequently, the Court finds that New England's claim of unethical conduct fails.
3) The cases relied upon by New England, Moody, 654 F.2d 795, Parrott v. Wilson, 707 F.2d 1262 (11th Cir.1983), and Ward v. Maritz, Inc., 156 F.R.D. 592 (D.N.J.1994), are distinguishable from the case at bar. Those cases involved motions to compel, and the arguments opposing the work product privilege were not based solely upon the documents sought. Furthermore, the challenged conduct in those cases was more clearly unethical than that charged in this case. Finally, in Moody, the Court of Appeals for the D.C. Circuit explained that:
[a] court must look to all the circumstances of the case, including the availability of alternate disciplinary procedures, to decide whether the policy favoring disclosure outweighs the client's legitimate interest in secrecy. No court should order disclosure ... if the disclosure would traumatize the adversary process more than the underlying misbehavior.
Moody, 654 F.2d at 801 (footnotes omitted)[4].
The Court finds that the circumstances of this case, where New England was aware of, and consented to, Selgrade's continued representation of Milford, and where New England has been unable to point to any specific breach of its confidences, do not warrant vitiating the work product doctrine. Applying the balancing test suggested in Moody, the Court concludes that the disclosure would cause more harm to the adversary process than the alleged underlying misbehavior. See Id.
4) Even if the Court were to find that Selgrade's conduct was unethical, Mintz Levin still would be entitled to a return of the documents. In Chronicle Publishing Co. v. Hantzis, 732 F.Supp. 270 (D.Mass.1990) (Mazzone, J.), the district court held that the issue of turning over to successor counsel the "tainted" work product of disqualified or withdrawn counsel is separate and distinct from the question of whether the attorney should have been disqualified in the first place. Id. at 273. Similarly, in this case, the Court considers the issue of disqualifying Selgrade separately from Mintz Levin's motion for a protective order.
The work product privilege should not be abrogated merely upon allegations made by New England that Selgrade had a conflict of interest, especially because New England *58 has failed to present any evidence that Selgrade compromised New England's confidences. Because the Court finds that the harm to Milford if denied access to Selgrade's work product outweighs the potential harm to New England if the work product is turned over to Mintz Levin, the Court will allow Milford's motion. See Id. (where district court allowed the turnover of work product to successor counsel); see also Equal Employment Opportunity Comm'n v. Orson H. Gygi Co., Inc., 749 F.2d 620, 622 (10th Cir.1984) (affirming the turnover of work product to successor counsel even though confidences were allegedly revealed to disqualified attorney); Behunin v. Dow Chemical Co., 642 F.Supp. 870 (D.Colo.1986).
In sum, for the reasons stated above, the Court rejects the arguments of New England and concludes that the documents at issue are privileged under the work product doctrine, and that such privilege is not nullified by any alleged misconduct on the part of Selgrade.[5] Furthermore, after considering the totality of the circumstances surrounding the inadvertent production of documents, including 1) the reasonableness of Mintz Levin's precautions to prevent inadvertent disclosure, 2) the amount of time it took Mintz Levin to notice its error, 3) the scope of the discovery, 4) the extent of the disclosure, 5) the fact that New England has not presented any evidence showing that it has been prejudiced by Selgrade's relationship with Tillinghast, and 6) the overriding interest of fairness and justice, the Court finds that Mintz Levin's inadvertent disclosure does not constitute a waiver of the work product privilege. See City of Worcester, 839 F.Supp. at 89. Consequently, the motion of Milford for a protective order will be allowed and Bowditch shall return the subject documents to Mintz Levin.

B. Motion of Milford to Disqualify Bowditch
Milford argues that Bowditch should be disqualified as counsel for the defendant, New England, because, although Bowditch had a clear obligation to return the eight documents at issue in this case, it instead chose to examine those documents and submit them to the Court. The Court has the authority and responsibility of supervising the professional conduct of attorneys who appear before it. Kevlik v. Goldstein, 724 F.2d 844, 847 (1st Cir.1984). Under certain circumstances, the Court has the power to disqualify an attorney. Moss v. TACC Int'l Corp., 776 F.Supp. 622, 623 (D.Mass.1991) (Caffrey, J.). As Judge Caffrey acknowledged, however:
[C]ourts have been reluctant to disqualify attorneys because of the severe consequences of a disqualification. This reluctance stems from the fact that disqualification has an immediate adverse effect on the client by separating him from the counsel of his choice. Also, many times such motions are made for tactical, not substantive, reasons and will most likely cause delay in the litigation. Thus, when deciding on a motion for disqualification, a court should proceed with caution.
Id. at 624 (citations and internal quotations omitted).
In the instant case, the Court agrees that Bowditch had an obligation to return the subject documents to Mintz Levin when it first realized that the documents were privileged. See supra, at 56-57. Nevertheless, the Court believes for two reasons that Bowditch did not act in bad faith: 1) Bowditch undertook precautions to secure the documents and prevent their widespread disclosure, and 2) Bowditch presented a colorable argument in opposition to Milford's motion for a protective order. Most importantly, the Court finds that Bowditch's failure to return the documents voluntarily, and its subsequent examination of those documents, has not substantially prejudiced Milford. The Court will order that all copies of the documents be destroyed, and that New England will not be able to rely on them in the *59 future. Accordingly, because Bowditch did not act in bad faith, and because Milford has failed to show any prejudice resulting from Bowditch's examination of the documents, the Court will deny Milford's motion to disqualify Bowditch. See Resolution Trust Corp. v. First of America Bank, 868 F.Supp. 217, 220 (W.D.Mich.1994).

C. Motion of New England to Impound the Privileged Documents Inadvertently Produced by Milford
Because the Court will order that all copies of the privileged documents are to be returned to Milford, see supra, at 56-58, the Court will deny as moot the motion of New England to impound those documents.

D. Motion of New England to Declare Waiver, to Dismiss, or, in the Alternative, to Disqualify Mintz Levin
New England argues that Selgrade's relationship with Tillinghast, while he was simultaneously representing Milford, created a conflict of interest and thereby breached New England's attorney-client privilege. As a result, New England seeks 1) to dismiss the complaint in its entirety, 2) in the alternative, to preclude Milford from introducing any evidence relating to New England's allegedly fraudulent regulatory filings, and/or 3) to disqualify Mintz Levin and Selgrade from representing Milford.
As explained above, the Court finds that New England advanced its argument that Selgrade's "unethical" conduct warrants a dismissal of the case only after Bowditch examined the inadvertently produced documents. In fact, New England's claim is based entirely on the contents of those privileged documents. Because Bowditch should have returned the documents without examining them, and because those documents should not themselves be considered in determining the existence of the work product privilege, or, for that matter, considered in any way by this Court, the motion of New England will be denied. See ABA Comm. on Ethics and Professional Responsibility, Formal Op. 368 (1992); Zolin, 491 U.S. at 572-73, 109 S.Ct. at 2631.
Furthermore, the Court finds it somewhat disingenuous for New England to move for dismissal on the grounds that Selgrade was representing Milford, even though New England had been aware of, and had consented to, such a relationship. See Lacouture Aff. at ¶ 4; Selgrade Aff. at ¶ 5. More importantly, New England has failed to submit evidence that Selgrade gained access via his association with Tillinghast to any confidential information relating to New England. Thus, New England has not been prejudiced by Selgrade's alleged "misconduct." Accordingly, the Court concludes that the circumstances of this case do not warrant a dismissal of the complaint or disqualification of the attorneys involved and that the motion of New England should, therefore, be denied. See First of America Bank, 868 F.Supp. at 220; Moss, 776 F.Supp. at 623; see also Chronicle Publishing Co., 732 F.Supp. at 273 (allowing successor counsel to access work product of predecessor).
Finally, the Court suggests that Bowditch heed the advice of the district court in the First of America Bank case where the court explained that:
[w]hile lawyers have an obligation to vigorously advocate the positions of their clients, this does not include the obligation to take advantage of a clerical mistake in opposing counsel's office where something so important as the [work product] privilege is involved.
First of America Bank, 868 F.Supp. at 219-20.

III. CONCLUSION
The Court will allow the motion of Milford for a protective order and deny the motion of Milford to disqualify Bowditch. The Court also will deny the motions of New England to impound the subject documents and to dismiss, declare waiver and/or disqualify Mintz Levin.
By this Memorandum and Order, however, the Court does not express a definitive opinion as to the ethics or the conduct of Selgrade, Mintz Levin, Milford or Bowditch. The Court merely concludes, for the reasons stated above, that New England has not *60 presented evidence sufficient to warrant the dismissal of any count or the disqualification of any counsel. New England, however, has other remedies available if it wishes to pursue its claim that Selgrade, Tillinghast or Mintz Levin breached their fiduciary duty to New England or violated the Canons of Ethics and Disciplinary Rules Regulating the Practice of Law in Massachusetts. Those remedies include 1) a civil suit against one or more of the attorneys for malpractice, and/or 2) referring the matter to the Board of Bar Overseers. To the same extent, Milford may, in another forum, pursue its claim that Bowditch's refusal to return the documents constituted misconduct.

ORDER
1. The Motion of Milford for a Protective Order is ALLOWED. As a result:
a. Bowditch shall return to Mintz Levin all copies of the subject eight documents that were inadvertently produced to Bowditch; and
b. Bowditch shall destroy all copies of notes, memoranda and other materials containing information derived from the privileged documents.
2. The Motion of Milford to disqualify Bowditch is DENIED.
3. The Motion of New England to impound the privileged documents is DENIED.
4. The Motion of New England to Declare Waiver, to Dismiss, or, in the Alternative, to Disqualify Mintz Levin is DENIED.
So Ordered.
NOTES
[1] Selgrade drafted six of the allegedly privileged documents. The other two documents at issue were prepared by an officer of Milford responding to Selgrade's memoranda.
[2] In his affidavit, Selgrade states that, in his two and one-half years at Tillinghast as an "independent contractor," he did no work on behalf of New England, or any other Providence-based client of Tillinghast, and obtained no confidential information relating to New England "as a result of the representation of New England by the Providence office of Tillinghast." Selgrade Aff. at ¶ 7. New England has presented no evidence to the contrary.
[3] The documents apparently relate to the allegedly fraudulent regulatory filings submitted by New England to the Rhode Island Energy Facilities Siting Board.
[4] Interestingly, after remand, the district court found that the circumstances did not call for abrogating the work product privilege.
[5] New England argues that both Milford and Mintz Levin bear some responsibility for participating in the alleged misconduct of Selgrade. The Court, however, finds no evidence that either Milford or Mintz Levin committed any wrongdoing. Milford and Mintz Levin believed that 1) New England consented to Selgrade's continued representation of Milford and 2) Selgrade never misappropriated any confidences from Tillinghast's representation of New England.